## RICHMOND, Respondent, v. ASHCRAFT, Appellant.

**St. Louis Court of Appeals, March 23, 1909.**

1. **EJECTMENT: Improvements: Notice.** An occupant of land, defeated in ejectment, cannot recover for improvements made by him while in possession unless such improvements were made in good faith and before notice of the adverse title.

2. ———: ———: ———. The word "notice" as used in Revised Statutes 1899, section 3072, means actual notice; such information as would put a reasonably prudent man upon inquiry is actual notice.

3. ———: ———: ———: **Record Title.** In an action by a defeated occupant against the successful owner for the value of improvements made by such defeated occupant, the record of the adverse title is not such notice *per se* as to impeach the good faith of the occupant in making the improvements.

4. ———: ———: **Good Faith: Notice.** A defeated occupant cannot recover for improvements made in good faith, on the belief that the adverse title, of which he had notice, was bad.

5. ———: ———: ———: ———: **Estoppel.** Where the record owner of land made declarations which misled the occupant

of the land into believing that the title of the latter would not be disturbed; such owner is estopped to deny the right of the occupant, who had been defeated in ejectment, to reimbursement for the value of improvements made on the faith of such declarations.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*John M. Atkinson* and *Thos. Mabrey* for appellant.

STATEMENT.—Plaintiff instituted an action against defendant to quiet the title to a tract of land containing one hundred and sixty acres in Ripley county. The answer was an action of ejectment against plaintiff for possession of the land, which action culminated in a judgment declaring the title in fee simple to be in defendant, awarding her possession and $200 damages, and assessing the value of the yearly rents and profits of the land at $35. Thereafter plaintiff began this proceeding on the statute to recover compensation for betterments alleged to have been made by him on the land in good faith and without notice of defendant's title. The jury awarded plaintiff damages in the sum of $600, and thereupon the court rendered judgment that he have and recover said sum from defendant, less the amount of the judgment for damages recovered against him in the ejectment action, and the amount of the rents and profits which would accrue between the date of the judgment in said action and the date of payment to plaintiff of the assessed value of his improvements and enjoin defendant from taking possession, meanwhile. The present appeal was prosecuted from the award of damages for the value of the betterments.

The facts which led up to the litigation between the parties are these: A. J. Ashcraft, who was defendant's husband but is now dead, owned the land until

October 17, 1893, when it was sold by the sheriff of
Ripley county under an execution against him in favor
of S. M. Chapman and conveyed to the latter by a sher-
iff's deed. Chapman afterwards either sold and con-
veyed the land to defendant, Mrs. Ashcraft, or arranged
to do so; the facts regarding the transaction being in
dispute and not really material in the present case ex-
cept as bearing on the good faith of plaintiff. She ob-
tained possession of a deed executed by Chapman Oc-
tober 21, 1896, and filed it for record October 17, 1898,
which deed purported to convey the land to her. Chap-
man testified he had agreed to sell her the land for $390
and as he lived in another part of the country, sent the
deed by mail to a man named Patterson, with an order
to deliver it to Mrs. Ashcraft on payment of the pur-
chase money; that she obtained the deed without paying
the price, either by purloining it or in some other un-
lawful mode. Mrs. Ashcraft had held the deed for some
years prior to the circumstances to be related next, and
was shown by the deed records of the county to be the
owner of the land after October 17, 1898. While the title
was in this condition she rented the premises for two
years to plaintiff Richmond, who is her nephew. Rich-
mond entered into occupancy as her tenant some time
in 1900, perhaps in the fall of that year. Shortly after-
wards, though just when we have been unable to as-
certain from the record, he was evicted by the sheriff
acting for Chapman, and was immediately put in pos-
session again pursuant to a contract for the purchase of
the land by him from Chapman. A month later, in
April, there was an attempt to sell the property under
a judgment for taxes against defendant and Chapman,
and at the sale the latter was the buyer, but got no
title because the tract was misdescribed in the proceed-
ings. The record is obscure regarding the eviction of
plaintiff.

Chapman testified he obtained judgment against

Mrs. Ashcraft alone, or jointly with her husband. He did not say explicitly the judgment was for the unpaid purchase money defendant owed him under the contract to sell to her for $390, and pursuant to which he had put in escrow the deed dated October 21, 1896, that he testified was never delivered, or that the sheriff acted under any judgment in putting plaintiff, as tenant of Mrs. Ashcraft, out of possession. There is nothing to show whether the sheriff was executing a writ, or, if so, what it was, or on what judgment issued. Plaintiff himself testified the deed' made by Chapman to Mrs. Ashcraft had not been set aside. Whatever its form and foundation, this ouster occurred, we believe, in the early part of 1901, and on March 2d of said year, Chapman conveyed the premises to plaintiff. The deed by which he did so is not in the record, nor is the nature or effect of it stated. Two days later, on March 4th, Mrs. Ashcraft signed and acknowledged a quit claim deed to plaintiff for the recited consideration of fifteen dollars, purporting to convey the land to him, and his testimony shows he intended, when he bought from Chapman, to obtain a deed from her also; but he said he undertook to buy from Mrs. Ashcraft, not because he believed she held any interest in or title to the property, but to prevent hard feelings between relatives and get the business settled satisfactorily to all parties. A brother of Mrs. Ashcraft, R. B. Rogers, claimed to own the tract at the same time, but on what his claim was based we do not know, except as indicated by his statement that Mrs. Ashcraft had been dispossessed of the land by Chapman and he (Rogers) claimed title for Chapman. The evidence is very confused and incomplete along this part of the case and fails to show clearly the facts. Mrs. Ashcraft refused to deliver to plaintiff the quit-claim deed she had signed and acknowledged, plaintiff says, because Rogers told her the land was worth more than the twenty-five dollars plaintiff testified he was to pay, though the deed recites fifteen dollars. The up-

shot of the negotiation was the deed remained unde-
livered and Mrs. Ashcraft still retained whatever title
she owned. Plaintiff afterwards made the improvements
for which he recovered the judgment appealed from,
treating the land as his own and believing he says, his
title was perfect, which belief he cherished until 1907,
when he attempted to borrow some money on it and
could not procure the loan because the deed from Chap-
man to Mrs. Ashcraft appeared to vest the title in her.
Hence his disastrous suit to quiet the title. Plaintiff
admitted he knew of the conveyance to Mrs. Ashcraft
when he bought, but was told by Chapman, who is a
lawyer, she never had paid for the land and was not
entitled to the deed, and by her that she had not paid
for it. By reason of these circumstances, a declaration
made by defendant and to be stated infra, and also be-
cause he supposed the sheriff's deed of April 3, 1901,
based on the judgment for delinquent taxes against her
and Chapman had passed the entire interest to Chap-
man, plaintiff considered his title good. He offered to
turn the place over to defendant, who had received
some pension money, if she would reimburse him what
he had been out; whereupon, to quote him, she said: "she
did not want it (*i. e.*, the land) would not work it if
she had it, did not work it when she did have it, and
would not work it now." This occurred before plaintiff
put on the improvements and he testified he made them
afterwards believing his title was good; that for six years
he put all his labor and earnings into the betterments.

The court refused to instruct for a verdict for de-
fendant and submitted the case to the jury on the fol-
lowing instructions, of which the first was given for
plaintiff and the other three of the court's own motion:

"The court instructs the jury that if you believe and
find from the testimony that plaintiff, E. T. Richmond,
went into possession of the land in controversy and
made the improvements testified about, in good faith,
believing at the time that he had title to the land, then

your verdict should be for the plaintiff, E. T. Richmond, for such sum as you may find from the evidence said improvements were reasonably worth. .

"1. The court instructs the jury that if they believe and find from the evidence in this cause that the plaintiff, Richmond, had actual notice of the adverse claim of defendant, Ashcraft, to the land involved in this suit prior to the time of making said improvements, if you find any improvements to have been made, then your finding must be for defendant Ashcraft, unless you shall further find and believe from the evidence in this cause, that Richmond had reasonable and strong grounds for believing the adverse claim of Ashcraft, if you believe he knew of her adverse claim, to have been destitute of any legal foundation.

"2. The court instructs the jury that if they believe and find from the evidence in this case that plaintiff, Richmond, had any information of defendant's adverse claim of ownership to the land involved in this suit, which would put an ordinarily prudent man on inquiry, prior to the time of making said improvements, if you find any improvements to have been made, then he had actual notice within the meaning of this term as used in instruction number 1.

"3. The court instructs the jury that by good faith as used in these instructions is meant an honest belief on the part of the occupant of the land that he has secured a good title to the land in question and is the rightful owner, and for this belief there must be such reasonable grounds as would lead a man of ordinary prudence to entertain it."

These instructions were requested by defendant and refused:

"1. The court instructs the jury that if they believe and find from the evidence in this cause that the plaintiff Richmond, had actual notice of the adverse claim of defendant Ashcraft, to the land involved in this suit, prior to the time of making said improvements, if you find

any improvements to have been made, then your finding must be for the defendant, Ashcraft.

"2. The court instructs the jury that if they believe and from the evidence in this cause that the plaintiff Richmond, had any information of defendant's adverse claim of ownership to the land involved in this suit which would put an ordinarily prudent man on inquiry, prior to the time of making said improvements, if you find any improvements to have been made, then your finding must be for the defendant, Ashcraft."

GOODE, J. (after stating the facts).—In passing on this appeal we have not been helped by brief or argument for plaintiff as we were entitled to be, considering the difficult points of law involved and the authorities arrayed by defendants's counsel in support of their propositions. They insist a verdict should have been directed for their client because plaintiff's own testimony demonstrates he made the improvements in controversy with full knowledge of her claim and title, and therefore not in good faith or prior to notice. The statute on which the action was brought reads thus:

"If a judgment or decree of dispossession shall be given in an action for the recovery of possession of premises, or in any real action in favor of a person having a better title thereto, against a person in the possession, held by himself or by his tenant, of any lands, tenements or hereditaments, such person may recover, in a court of competent jurisdiction, compensation for all improvements made by him in good faith on such lands, tenements or hereditaments, prior to his having had notice of such adverse title." [R. S. 1899, sec. 3072.]

Said statute allows compensation to a defeated occupant for betterments, only in the contingency of their having been made in good faith and before he had notice of the title which prevailed against him. The legislation on this subject varies considerably in the different

States, and hence the adjudications on the question of what circumstances will justify a judgment for compensation, vary too with the diverse language of the statutes and, in some measure, in consequence of judicial disagreements regarding the equitable principles applicable to the subject. We cite infra those cases we have found wherein the courts held more or less pointedly, in favor of the occupant's good faith and claim for compensation, even though he improved with knowledge or notice of the hostile title, if he believed, on reasonable grounds, it was worthless in law. Most, or all, of these cases dealt with statutes unlike our own in that they required less explicitly than do ours, not only good faith on the part of the occupant, but absence of prior notice of the adverse title, as conditions prerequisite to recovery. [Petit v. Railroad, 119 Mich. 492; Thomas v. Wagner, 131 Mich. 601; Griswold v. Bragg (Conn.), 6 Fed. Rep. 342, 346; Wells v. Riley, 2 Dill. (Ia.) 566; Harrison v. Castner, 11 Ohio St. 339; Whitney v. Richardson, 31 Vt. 300; Barrett v. Stradl, 73 Wis. 389; Dorn v. Dunham, 24 Texas, 266, 278; Parrish v. Jackson, 69 Texas, 614.] Every opinion on the question we have looked into, except Pugh v. Bell, 2 T. B. Mon. 125, requires the betterments to have been put on the land in good faith, but partly from general reasons and partly from statutory discrepancies, the courts disagree about the circumstances which will prevent that quality from being ascribed to the occupant. [Warvelle, Ejectment, sec. 357, passim secs. 546, 649.] The terms "good faith" and "notice" are intimately related in jurisprudence, but are not of uniform meaning. The former retains, in some measure, the popular sense of honest belief, but its technical significance depends largely on the doctrine of notice as developed in the progress of the equity system. Considered with reference to and as influenced by notice, the term "good faith" bears several legal meanings according to the subject-matter of the litigation in which it is used. As applied to the purchase of a

parcel of land, the title to which has passed from the grantor by a prior recorded deed or incumbrance, the constructive notice of the prior conveyance which the record imparts, prevents one taking title subsequently from being a purchaser in good faith. [Turk v. Funk, 68 Mo. 19.] When the controversy is between the record owner of land and a defeated occupant seeking pay for improvements, such constructive notice of the adverse title will not impeach the good faith of the occupant in putting betterments on the land, and this can be done only by proof that he had actual notice of the successful title when the improvements were made. [Hill v. Tissier, 15 Mo. App. 291.] But in this class of cases the occupant may be found to have had actual notice of the adverse title from proof that he knew other facts which, if followed up, would have led to notice; and if, with such knowledge of collateral facts, the occupant fails to investigate, he will be charged with knowledge of whatever would have been learned by proper inquiry. [Lee v. Bowman, 55 Mo. 400.] Those examples illustrate two senses attached to the phrase "in good faith" under the influence of the doctrine of notice, and perhaps a third might be drawn from the law of negotiable paper. [Hamilton v. Marks, 63 Mo. 167.] In discussing the significance of the terms as used in the statute relevant to the present case, our courts have said they were adopted by the legislature from equity with the full meaning and force given to them in that system of jurisprudence; saying, further, in substance, that "notice" and "good faith" cannot co-exist, for it is an equity doctrine of universal recognition that he who takes with notice takes subject to the claim, and the notice which will suffice for this purpose does not mean direct and positive information, but anything calculated to put a prudent man on the alert. [Lee v. Bowman, supra; Marlow v. Leiter, 87 Mo. App. 504.] The rule that notice of a fact will be imputed to a man who remains ignorant of it from neglecting to follow up a sufficient clue, is applied care-

fully in equity, but we have no reason to set forth the rules for its application, or ask whether it is adapted to cases like the one in hand, as the Supreme Court holds it is. The clear effect of Lee v. Bowman is, that if a defeated occupant had notice, in the chancery sense, of the successful title before he improved the land, he should be denied the status of an improver in good faith; and this rule has been enforced consistently by our courts, with the qualification already stated regarding the inadequacy of constructive record notice to impugn the bona fides of the occupant. [Hill v. Tissier, 15 Mo. App. 299; Pierce v. Rollins, 60 Mo. App. 497, 508; Stump v. Hornbeck, Id. 367; Marlow v. Leiter, 87 Mo. App. 584, 589; Kugel v. Knuckles, 95 Mo. App. 670; Gallenkamp v. Westmeyer, 116 Mo. App. 680; Sires v. Clark, 112 S. W. 114; Brown v. Baldwin, 121 Mo. 106.] We have found no pointed adjudication in this State of the question whether an honest but erroneous opinion in favor of the security of his own title, will suffice to uphold the occupant's demand for compensation, if he had notice of the existence of the adverse title, and, considering it worthless, made betterments. The conclusion to be drawn from the decisions and judicial comments, is against this proposition and in favor of the view that notice of a title adversely held is incompatible with good faith, regardless of the opinion of the occupant concerning the validity of such title. A person who claims to own land in the possession of another, may bar the occupant from compensation for betterments by giving him notice in writing of the claim and its nature. [R. S. 1899, sec. 3080.] This statute cannot be construed to allow an exception in favor of an occupant who thinks the hostile title is bad and makes betterments regardless of the written notice. In Brown v. Baldwin, the relief was denied the occupant because he had been notified in writing of the better title before he improved, though the Supreme Court thought he had acted from faith in his own title. This authority settles the law against the

right of a party who improves after formal notice, to compensation, even though he deemed the hostile title worthless. And in Lee v. Bowman, the Supreme Court held actual notice of the adverse claim, however derived, was as potent to bar compensation as when formally given in writing. That is to say, the kind of notice which is imputed from facts sufficient to arouse inquiry, is accorded the same efficacy as the statutory notice. It may be the Legislature intended any notice except the statutory one, should leave the question of good faith open; but it is enough for us to say the law has been declared the other way by the Supreme Court. The Missouri cases do not quite cover the point of whether an occupant is entitled to payment for bettering the land while he cherished an opinion, on reasonable grounds, that his own title was good and an outstanding one of which he knew, bad. In the absence of a direct precedent, and inasmuch as this doctrine has been accepted by eminent courts and contains some equity, we have endeavored to ascertain what rule is supported by the weight of those outside judgments which were not pronounced under the influence of statutes more favorable to the occupant than ours. Allowing compensation is admitted to be attended with this injustice; the betterments may be unsuited to the use and purposes of the real owner of the land, or more expensive than he can afford; and the disposition is to confine the remedy to such instances as fall clearly within the terms of the statute, or in the absence of a statute, within the rules of equity. [Warvelle, Ejectment, sec. 606.] It goes without saying that no court will deny the occupant relief because his title turned out to be bad; for this would defeat the remedy, which proceeds on the theory that the improver will lose to a better title, and aims to reimburse him for enhancing, in good faith, the value of the land. [Jones v. Perry, 10 Yerg. 59; Krause v. Means, 12 Kas. 335.] Nevertheless, faith in his own title as against an adverse one of which we was aware, is not enough to confer the right to

reimbursement. This is according to the weight of adjudication and the texts of commentators. [Walker v. Quigg, 6 Watts, 87; 31 Am. Dec. 452; Jackson v. Loomis, 4 Cow. 658, 15 Am. Dec. 351 and note; Morrison v. Robinson, 31 Pa. St. 456; Hall v. Hall, 30 W. Va. 779; Luthecum v. Thomas, 59 Wend. 574; Montgomery v. Whitfield, 41 La. Ann. 649; White v. Stokes, 67 Ark. 174, 189; Holmes v. McGee, 64 Miss. 129; Horton v. Sledge, 29 Ala. 478, 498; Gordon v. Tracy, 74 Ala. 232; Greene v. Biddle, 8 Whart. 1, 79; Canal Bank v. Deffebach, 4 Dak. 20, 41; Sedgwick-Waite, Land Titles (2 Ed.), secs. 694, et seq.; Warvelle, Ejectment, sec. 553.] In Holmes v. McGee, on facts like those before us, the Supreme Court of Mississippi determined the point under examination and said: "On his own testimony the appellant was not a bona-fide holder of the land so as to entitle him to compensation for improvements under section 2512 of the Code of 1880. When he purchased and made the improvements he knew all the facts about the title. True, he thought the tax title was good and sufficient to defeat the claim of the McGee heirs. In this he was mistaken, and as he knew the facts and mistook the law, the sincerity of his erroneous belief is not sufficient to bring him within Cole v. Johnson, 53 Miss. 94." The so-called Texas rule is condemned both on principle and authority, in the treatise we have cited; and we think the argument for the proposition that compensation ought to be refused when the occupant had notice, is unanswerable, if he not only knew of the outstanding title but was not led by the holder to believe it would never be asserted in hostility to his own.

Turning now to the rulings on the instructions given in the present case, we find the first instruction granted for plaintiff left out the element of notice and authorized a verdict for him if he made the improvements in good faith, thereby failing to take account of the effect notice of defendant's claim would have on the demand of plaintiff. The first instruction granted by the court of

its own motion went further and adopted the Texas Rule. It follows the case was submitted to the jury on erroneous principles of law.

The question remains of whether, on the entire evidence, plaintiff's demand must be defeated as a matter of law. Beyond doubt he was apprised of the incidents which had occurred in connection with the title after the first sale under the execution against defendant's husband in 1893, and knew defendant had refused to deliver him the deed conveying any interest which might be vested in her. Notwithstanding these facts there is a strong equity in his favor. The case is to be distinguished from Brown v. Baldwin, supra, wherein it appeared the title which prevailed had been asserted continuously and the occupants repeatedly notified in writing of the rights of the holder. Moreover the latter began an action for possession as soon as negotiations for a sale had ceased between him and the occupants and nothing was said or done meanwhile to lull them into security or induce them to expend money on the property. In the case before us, though defendant had refused to make a deed to plaintiff, she took no step toward asserting her title until aroused into activity by his suit to quiet title filed six years later, and then merely to remove what he supposed was a technical blemish. During those years plaintiff made improvements which trebled the value of the land. He had offered to convey the property to defendant before they were made if she would pay him what he was out. This she was not bound to do and cannot be estopped for refusing to do; and neither does his right to reimbursement depend on her omission to sue. [Whitney v. Richardson, 31 Vt. 300.] If she was not bound to say or do anything to put plaintiff on his guard, she had no right to lull him into false security by declarations adapted to induce the belief that her title was not inimical to his and would never be asserted against him. The evidence inclines to prove she misled plaintiff by saying she did not want the land, had never worked

it and would not work it if she had it. This matter needs further elucidation, but makes an impression unfavorable to defendant as it stands. All the cases on the subject say the notice an occupant must have to bar his recovery for improvements, is notice of an adverse title; and, indeed, these are the words of our statutes. Without laying down any broad rule, we think both the statutes and the decisions contemplate notice of an outstanding title which the occupant has no reason, based on professions of the holder, to believe will not be utilized. If assurances are given that it will not be, and the occupant improves on the faith of them, his claim for compensation falls within the doctrine of equitable estoppel, which has been recognized by courts as entitling a party, under appropriate circumstances, to pay for betterments, though made with knowledge that his title is defective. [Brown v. Baldwin, loc. cit. 125; Hall v. Hall, 30 Vt. 779, 784; Morris v. Terrell, 2 Rand. (Va.) 6; Cawdor v. Lewis, 1 Younge 9 Coll. 427; 2 Story, Eq. Jur. (17 Ed.), secs. 385, 655, 799 and cases cited.] Such decrees are given upon the general principles of equity jurisprudence and independent of any statute; but we do not see that our statutes would hinder the application of those principles to this case, if what defendant said would have induced a prudent man, apprised of all the facts plaintiff knew, to believe defendant did not intend to disturb him. Story says if the real owner has fraudulently misled the other party regarding the title, the claim for compensation stands on the highest equity, and this theory of justice pervades our jurisprudence and has been enforced in a variety of cases to prevent owners from recovering their property, or recovering it without making purchasers or occupants whole. [Story, supra; 3 Pomeroy, Eq. Jur. (3 Ed.), section 1241 and notes.] Among instances of its application are some wherein widows were denied their dower in realty because, by their assurances, they had led purchasers to believe they claimed no dower. [2 Scribner, Dower (2

Ed), 266; Sweaney v. Malory, 62 Mo. 485.] After the declaration we have stated, defendant allowed plaintiff to improve the property through six years at much labor and expense to him; and, if otherwise she would have been under no duty to protest, it would work a fraud to exempt her from reimbursement if he relied on what she said and reasonably might rely on it. Her refusal to deliver the deed is a strong circumstance against plaintiff, but ought not to be treated as conclusive in view of her subsequent statement; which indicated that if she had intended to assert her title, she had abandoned the intention. On a retrial of the case the pleadings may need amending to allege the estoppel.

The judgment is reversed and the cause remanded. All concur.