## CALLOWAY BANK v. F. A. ELLIS et al.

Springfield Court of Appeals, March 11, 1922.

1. **SCHOOLS AND SCHOOL DISTRICTS:** Bank Purchasing Building Bonds of District Illegally Organized Held Entitled to Equitable Lien on Building. Where a bank purchased bonds voted by a district illegally organized, and a school building was erected with the proceeds, the bank is entitled to an equitable lien on the building enforceable to the extent of the bonded debt.

2. **SCHOOLS AND SCHOOL DISTRICTS:** Deed to School District Illegally Organized Held a Nullity. Where a deed for a school building site was made to a district illegally organized, the deed was an absolute nullity and no title passed thereunder.

3. **IMPROVEMENTS:** One Erecting Building in Good Faith on Land of Another Thinking he has Title May Recover Value of Improvement. Where a person in good faith and under the belief that he has title erects a building on the land of another and with the knowledge and consent of the owner, the true owners of the land

do not become the owners of the improvement and the builder can recover for the value thereof.

4. **SCHOOLS AND SCHOOL DISTRICTS: Provision in Deed for Reverter of Schoolhouse Site Held Valid.** Provisions in a deed conveying a site for a school building that, if the schoolhouse should not be built in one year and received by the State or if after it was built, school should not be maintained for three years therein the site should revert to the grantors, *held* valid.

5. **SCHOOLS AND SCHOOL DISTRICTS: Purchaser of Bonds Not to be Held to Have Actual or Constructive Knowledge of Compliance With Law.** While the State Auditor's certificate printed on the back of bonds of a district illegally organized that all the laws were complied with in issuing the same is only prima-facie evidence of that fact, the purchaser ought not to be held to have actual knowledge that the superintendent of schools failed to put up proper notices of its organization, or constructive knowledge from which he could and should have traced the defect in its organization.

6. **SCHOOLS AND SCHOOL DISTRICTS: Bank in Purchasing Bonds of District Illegally Organized Held Not to be Charged with Gross Negligence in Parting with its Money.** Where a district was illegally organized and the bank bought its bonds with the certificate of the State Auditor printed on the back stating that all the laws had been complied with in issuing the same, and the directors when the money was paid had no knowledge of anything wrong with the organization or in proceedings leading up to their issuance, the bank cannot be charged with gross negligence in parting with its money.

7. **EQUITY: Negligence in Discovering Mistakes Held Not to Bar Equitable Relief.** Even though one may be negligent in failing to discover mistakes, he will not be denied equitable relief where no one has been led into or permitted to change positions in consequence of what has been done under the mistake.

8. **SCHOOLS AND SCHOOL DISTRICTS: Purchaser of Bonds Seeking Equitable Lien on Schoolhouse Not Barred by Failing to Offer Restitution.** Where a bank purchased an issue of building bonds from a district illegally organized, the bank will not be denied a lien on the building for the amount paid for the bonds for failing to offer to allow injuries sustained by grantors claiming the building under a reverter clause in their deed of the site; the bank having nothing in its possession or control belonging to them.

9. **IMPROVEMENTS: One Knowingly Placing Improvements on Another's Land Not Entitled to Relief.** Where one knows the situation and makes an improvement on another man's land, he will not be entitled to relief, in view of Revised Statutes 1909, section 2401.

10. **SCHOOLS AND SCHOOL DISTRICTS: Purchaser of Bonds of District Illegally Organized Entitled to Recover Proceeds of Sale Held by Directors.** Where directors of a district held the proceeds of a sale of its bonds in the treasury at the time its organization is declared void, the purchaser would be entitled to recover the money so received.

11. **TRUSTS: Constructive Trust Arises When Party Obtains Money or Property Not Equitably His and Actual Fiduciary Relation or Fraud Not Essential.** A constructive trust arises when one party has obtained money or property which does not equitably belong to him, and it is not essential that there be an actual fiduciary relation existing, or that there be actual fraud.

12. **SCHOOLS AND SCHOOL DISTRICTS: Grantors in Deed of Schoolhouse Site to Illegally Organized District Taking Possession Accept Same Subject to Trust in Favor of Purchaser of Building Bonds.** Trustees of a district illegally organized were trustees of everything which they held to which a purchaser of its bonds would be entitled in equity, and, when grantors of a schoolhouse site on which a building was erected from the proceeds of the sale of such bonds took possession thereof under a reverter claim in their deed and assumed the authority over it that the directors as trustees would have, the property is accepted subject to the trust, provided nothing intervened that caused them to change their position.

Appeal from Circuit Court of Barry County.—*Hon. Chas. L. Henson*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. A. Gardner, Emory Smith* and *J. R. Baker* for appellant.

*J. S. Davis* and *C. M. Landis* for respondents.

FARRINGTON, J.—This is an appeal from the judgment of the circuit court of Barry County dismissing the plaintiff's bill in equity. On June 12, 1913, in Barry County, Missouri, there was an attempted organization of a School District under the Buford Act. Directors were elected for the consolidated district and they proceeded to function, voting bonds to build a school house and secured a school site. The defendants made a deed to five acres of land to the school directors for the consideration of one dollar and other considerations, inserting a provision in the deed as follows: "This deed made with the understanding that if the contemplated house should fail to be built in one year and received by the State of Missouri, or after it is built should a failure to maintain a school for the term of three years at any one time this described piece of land with the belongings thereto shall revert to the said grantors of said land."

The district took charge of the land, cut some timber from it (which from the record apparently was of little value), excavated for a basement and placed concrete walls for a foundation. The excavation for the basement did not run under the whole building but was merely under one room and was some six or seven feet deep. It was used as a furnace room and was something like ten or twelve feet square. This building was erected across the road from the defendants' house, which was out in the country about in the center of the consolidated district.

After the formation of the District, an election for bonds was voted and $4000 of bonds were issued and registered with the Auditor of the State. The bonds were sold to the plaintiff in this action, and it appears that everything was in proper form so far as affecting the validity of these bonds is concerned, except that there was some discord among the residents of the Consolidated School District, from which followed a *quo warranto* proceeding to declare the organization of this District void and to oust the directors from office. That liti-

gation was finally concluded in State ex inf. Burges, ex rel. Marbut, v. Potter, 191 S. W. 57, where it was held that the failure of a Superintendent to give the notice in time and manner prescribed by law left the meeting which was called to effect the organization without authority to organize such District, and that the directors acting under such organization were without authority and power. Before that suit was determined, the plaintiff's money had been invested by the school directors in the building, which is the subject of this suit. School had been started and was being carried on under the organization, such as it was. Of course, when that judgment of the Supreme Court, declaring the organization invalid and the directors out of authority or power to act, was rendered, they closed school and the building was left standing on the ground which had been deeded by the defendants to said school directors. And after there was a failure to hold school in said building for a period of three years, the defendants took possession of the ground and the building, claiming the same under the terms of the reverter clause in the warranty deed.

It is shown that the plaintiff had no actual knowledge of the pendency of the *quo warranto* proceeding until after the District had been adjudged invalid and until long after it had purchased the bonds and the money turned over to the school directors had gone into the erection of the building.

It is admitted that no levy was ever made to meet the bonds or the interest thereon, and, we may say here, that plaintiff sought an equitable lien to be declared and enforced against the ground and the building for the money which it paid the directors for these bonds. It has abandoned its claim to a lien on the land and merely asks that an equitable lien be established on the building. It is admitted that plaintiff's money went into the building in question; that the defendant and his wife are in possession of it; and that there never has been any legal organization of the District, and the plaintiff is still the

owner of the pretended bonds and paid therefor the sum of $4000.

The evidence also shows that the defendant, Ellis, at the time he made this deed to the District, knew that the validity of the organization of the District was questioned and that a suit to declare it invalid had been filed. This the defendants had actual knowledge of, and of which the plaintiff had no actual knowledge.

It must be conceded that since the District is disorganized and the Directors shorn of all power to run and carry on the school by the decision of the Supreme Court, that if plaintiff has any remedy whatever he must seek it at the hands of a court of equity. We are of the opinion that a court of equity should grant some relief to this plaintiff, and that it is entitled to have an equitable lien on the building which was erected with its money, and that it shall be entitled to enforce a lien to the extent of its debt for $4000, first having made the defendants whole on account of any damage that flowed to their land occasioned by the destruction of timber cut from one or two acres of same, consisting of small post oak and black oak trees and a few large black oak trees. The defendants should also be made whole for such damage as will result to the land by reason of the excavation of something like ten or twelve feet square and six or seven feet deep made in the construction of the basement or heating room, and also be allowed such damage as the erection of the concrete foundation will cause the land by having been put there.

We base this decree on the broad principle announced in the case of Berry v. Stigall, 253 Mo. 690, 162 S. W. 126, which is that "equity seeks to prevent the unearned enrichment of one at the expense of another." The deed made by the defendants to the School District was an absolute nullity because no School District in law existed. The deed was no more valid than had the grantee named therein been a dead man. No title whatever, by reason of such deed, passed from the defendants and no cove-

nants or rights of reverter made in such deed are of any force and effect. It is well established in this State that there can be no conveyance of land without it be to a grantee capable of receiving a grant. [Douthitt v. Stinson, 63 Mo. 268; Thomas v. Wyatt, 25 Mo. 24; Arthur v. Weston, 22 Mo. 378.]

The law is also well settled that where a person in good faith and under the belief that he has title erects a building upon the land of another, and with the knowledge and consent of the owner, that the true owners of the land do not become the owners of such improvement and the builder can recover for the value of his improvements. [Sires v. Clark, 132 Mo. App. 537, 112 S. W. 526; Richmond v. Ashcraft, 137 Mo. App. 191, 117 S. W. 689; Smith v. Mount, 149 Mo. App. 668, 129 S. W. 722.]

There can be no doubt that such provisions as were made in the reverter clause in that deed were valid and would be enforced where the deed in which they are made is a valid deed. In the case of Clark v. Town of Brookfield, 81 Mo. 503, cited by respondent, the deed was a valid deed, hence it differs from the case at bar.

The defendants in this case cannot rely upon the reverter clause, for the reason before stated, that that clause together with the whole deed was a nullity. If plaintiff, therefore, must be denied equitable relief in this case, it must be not from any rights of the defendants to this building because it was placed on their land under color of title by the school directors who were proceeding as though their organization was valid, and this improvement now stands on defendants' land without the parting of one cent consideration for same so far as they are concerned. Denial of relief must therefore be placed on something that the plaintiff has done which will bar in the right to equitable relief, and the respondent has proceeded largely along this line in the brief.

It is shown that the plaintiff bought these bonds on the certificate of the State Auditor which was printed on

the back of the bonds, and which certificate is as follows:
"State of Missouri, Office of State Auditor:

"I, Jno. P. Gordon, State Auditor of the State of
Missouri, do hereby certify that all the laws have been
complied with in issuing the within bond, and that all
the conditions of the contract under which it was ordered
to be issued, have been complied with, the evidence of
which is on file; and that it is duly registered in my office.

"Witness my hand and official seal, done at office
in the City of Jefferson, this 2nd day of October, A. D.
1913.
(SEAL)

"Jno. P. Gordon,
"State Auditor."

While it is true, as contended by the respondent, that
this certificate is only prima-facie evidence of the fact
therein stated, plaintiff ought not to be held to have ac-
tual knowledge that the Superintendent of Schools had
failed to put up proper notices of the organization of
the district; or that from the fact that such certificate
is only prima-facie evidence of what it stated, that that
alone should give plaintiff constructive knowledge, or
such knowledge from which he could and should have
traced the defect in the organization of the School Dis-
trict. In fact, so far as actual knowledge is concerned,
the plaintiff here stands in much better position than
the defendants, because when the money was paid over
by plaintiff to the School Directors for these bonds they
had no actual knowledge that there was anything wrong
in the organization of the district, or in the proceedings
leading up to the issuance of the bonds, while the de-
fendants admitted that before they made this deed to
this nonentity they knew that a suit was pending which
was for the purpose of declaring the grantee in their deed
a nonentity.

We must, therefore hold that there is nothing shown
in this record to sustain the charge of the respondents
that the appellant had been grossly negligent in parting

with its money for these school bonds; and even though one may be guilty of some negligence in failing to discover mistakes he will not be denied equitable relief where no one has been led into, or permitted to change positions in consequence of what has been done under the mistake. [See 21 Corpus Juris, 90.] But it is said, citing the case of Long v. Abstract & Loan Co., 252 Mo. l. c. 172, 158 S. W. 305, that the plaintiff in this cause should be denied relief because he had not offered to allow the defendants the injuries sustained. Cases of this character are not applicable here for the reason that the plaintiff here had absolutely nothing in his possession or under his control that belonged to the defendants. He owed the defendants nothing. If the shoe was on the other foot, and the plaintiff here had possession of the building and was holding it, and attempting to come into equity and sustain its right to hold it, then defendants' cases would be more applicable, for in that case, before the plaintiff could ask for equity, he must do equity. But that rule cannot apply where the defendant, seeking to set up that maxim of law, has everything that is the substance of the litigation.

We are cited by respondents to section 2401, Revised Statutes 1919, and Brown v. Baldwin, 121 Mo. 106, 25 S. W. 858. It is undoubtedly the law that where one knows the situation and goes ahead and makes an improvement on another man's land, he will not be entitled to relief, but that is not the case here, for the plaintiff, it is conclusively shown, actually knew nothing of the defect in the organization of the District. The defendants are in no position, when they make the deed to the land and stand by and see the grantees therein making an improvement on the strength of that deed, to raise the question now that the school directors should have known at the time that they had no title to this land, although in the face of the deed of the defendants it purported to grant it to them.

Had the school directors issued these bonds and received the $4000 from the plaintiff and held it in the treasury, and had it there at the time the Supreme Court declared the organization void, no one would question the plaintiff's right to recover that money from those men who had received it under the cloak of being School Directors. They would be held as Trustees for the benefit of those who had parted with their money to them.

A constructive trust arises when one party has obtained money or property which does not equitably belong to him, and it is not essential that there be an actual fiduciary relation existing; or that there be actual fraud. [Williston v. Alderman, 106 S. C. 386, 91 S. E. 296; Davenport v. Burks, 30 Idaho, 599, 167 Pac. 481.]

It is held in County v. Cottle, 94 S. E. 948, that where one's property is appropriated, he may in equity follow it, either in its original or changed form, and into the hands of a third party who took it with notice that it had been improperly appropriated, and the holder of the property will be treated as a trustee. [Zimmer v. Bank, 81 So. 811; Angle v. Railroad, 151 U. S. 1, 38 Law Ed. 55.]

It was said in Atkison v. Ward, 47 Ark. l. c. 539, 540, "So long as the rights of innocent purchasers for value, have not intervened, the plaintiff should have been allowed to follow the fund; the only question being the identity of the funds."

The trustees of this District were undoubtedly trustees of everything which they held to which this plaintiff would in equity be entitled for the payment of its indebtedness, and when the defendants here took possession of the property and assumed the authority over it that the directors as such trustees would have, he then must accept that property subject to the trust, provided nothing had intervened that had caused the defendants to change their position, and nothing is shown in this record whereby the defendants have given up any-

thing or have surrendered any rights they might have growing out of this entire transaction.

It is said in 17 R. C. L. 605, sec. 14, ''Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.'' And in 10 R. C. L., page 351, section 100, speaking of equitable liens, it is said: ''Such a lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.''

We, therefore, hold that the judgment of dismissal be reversed and the cause remanded to the trial court for the purpose of decreeing and declaring such amount so found to be due plaintiff to be a lien on the school building erected on defendants' land, and that said lien be foreclosed for the purpose of satisfying such debt. The court will further assess the damage which has flowed to defendants' land by reason of the erection of this building thereon, that is to say, the damage done to the land on account of the excavation which was made and cement foundations which are laid, and the damage which was done to the land by reason of the cutting of timber therefrom while in the hands of the school directors before the District was declared a nullity. From the proceeds of the sale of the building there shall first be paid such damages as are found due the defendants, and the balance shall be applied to the payment of the amount of indebtedness found to be due the plaintiff. *Cox, P. J.,* and *Bradley, J.,* concur.