Eugene NOELKER and Cecelia Noelker, (Plaintiffs) Respondents,

v.

August A. WEHMEYER and Mabel Wehmeyer, (Defendants) Appellants.

No. 32126.

St. Louis Court of Appeals. Missouri.

June 15, 1965.

A. H. Juergensmeyer, Warrenton, Theodore P. Hukriede, Washington, for defendants-appellants.

Leo A. Politte, Washington, Robert Hoelscher, Warrenton, for plaintiffs-respondents.

DOERNER, Commissioner.

Plaintiffs by this action sought the ejectment of defendants from certain land in Warren County. Defendants filed an answer and a counterclaim in which they alleged that their deed to plaintiffs had been procured from them by fraud, and asked that it be cancelled and the real estate ordered reconveyed to them upon payment of their admitted indebtedness to plaintiffs. The trial court entered an interlocutory decree in which it found that the deed from defendants to plaintiffs had not been procured by fraud, but that it was intended as an equitable mortgage to secure the indebtedness of the defendants to the plaintiffs. The decree ordered that, upon the payment on or before April 27, 1963, of the indebtedness and the further sum of $4,765.02 to reimburse the plaintiffs for improvements they had made on the premises, the plaintiffs should reconvey the property to the defendants. The interlocutory decree further provided that, in default of the payment of such sums, final judgment would be entered in favor of the plaintiffs on their petition and against the defendants on their counterclaim. Defendants failed to make the payments called for by the interlocutory decree and on October 28, 1963, the trial court entered a final judgment in favor of the plaintiffs on their petition in ejectment and against the defendants on the defendants' counterclaim. Defendants appealed to the Supreme Court, which determined that it lacked appellate jurisdiction and transferred the cause to this court. Noelker v. Wehmeyer, Mo., 383 S.W.2d 729.

In their brief defendants state:

"The trial Court found, as set out in the Interlocutory Decree that the Warranty Deed was not executed as a result of fraud and that it was to be considered as an equitable mortgage. The Appellants accept the findings of the trial Court on those questions.

"It is the contention of the Appellants that the trial Court was in error in its finding that they would have to pay Respondents $4,765.02 with interest at 6% from February 27th, 1962 in addition to the amount of the cancelled note in order to secure a conveyance of the real estate to them."

Thus the defendants have restricted the grounds of their appeal to that part of the decree regarding payment for the improvements made by plaintiffs. They contend that as to this feature the judgment and decree was erroneous for two reasons: (1), that the plaintiffs were not bona fide purchasers of the real estate and, therefore, were not entitled to be reimbursed for any money they expended in making improvements thereon; and (2), that if plaintiffs are entitled to any reimbursement, the evidence showed that the improvements

enhanced the value of the land by only $1500 and that defendants should be required to pay only that amount in addition to their admitted indebtedness, instead of $4,765.02 as ordered by the court. Consideration of these points requires a further statement of the facts.

On August 20, 1955, the defendants, who then owned the farm in question, borrowed the sum of $2600 from the plaintiffs. Defendants executed a promissory note to plaintiffs of that date, in the principal amount of $2600, due two years after date, with interest thereon at the rate of 5% per annum, and a deed of trust to secure the payment of the note. During the trial the parties stipulated that the balance of principal and interest due on the note on October 24, 1960, was $2340.50. The evidence is undisputed that on October 23, 1960, plaintiff Eugene Noelker was at defendants' home. It is also undisputed that a discussion ensued between Noelker and defendant August A. Wehmeyer concerning an automobile accident in which Wehmeyer had been involved a few days before, and the possible danger of defendants losing the real estate because of liability arising from the accident. Lastly, it is further undisputed that the next day, October 24, 1960, the defendants executed a warranty deed by which they conveyed the property in question to the plaintiffs and that the note and deed of trust were subsequently released of record. The testimony as to the agreement which was reached which led to the conveyance is in dispute and, as the defendants characterize it in their brief, "was confusing, to say the least." Plaintiffs' version, as best we understand it, was that defendants were to pay rent of $20 per month to plaintiffs until such time as defendants were able to repay the balance of principal and interest due on the money they had borrowed. A further stipulation, according to Noelker, was that he agreed to the conveyance on condition that while plaintiffs held title he would construct a dam and a lake on the farm, and alter or repair the road leading into it, and that de-

fendants would pay for such improvements if and when they exercised their right to redeem the property. Wehmeyer's version was that plaintiffs were to hold the title until the liability growing out of his accident had been settled, and were to reconvey upon payment of the balance of principal and interest due for the money borrowed. He acknowledged that on the same day, but after, the deed was signed, Noelker asked him for $20 a month rent, that he asked Noelker whether such payments would reduce the principal due, and when told that they would not, that nothing more was said. In effect, he denied having agreed to pay rent of $20 per month, but there was introduced in evidence a letter he had written to Noelker in February or March, 1961, in which he stated that he was unable to pay the $20 per month and asked for further time to do so. He also denied that the building of the dam and road had been a condition of the transfer to plaintiffs, or that he had agreed to reimburse plaintiffs for any such improvements when he redeemed the farm.

Noelker testified that he made repeated demands upon Wehmeyer for the $20 per month rent, and that while Mr. Wehmeyer promised payment, he asked for additional time in which to do so, and never paid anything. Noelker also related that Wehmeyer cut stave bolt trees and walnut trees, and continued to do so after plaintiffs objected. Finally, according to Noelker, he wrote Wehmeyer a letter in which he stated that he was going to make improvements by building a lake and other things, and wanted to know whether Wehmeyer wanted the place back. Receiving no answer, Noelker assumed that the defendants did not want the place and in June, 1961, he started to have the dam built. According to Noelker, Wehmeyer was present when Noelker and Melvin Hellebusch, the contractor, discussed the site of the dam, and made no objection to its construction, and there was other evidence that Wehmeyer to some extent helped in the survey for

and the building of the dam, without ever objecting to its construction.

Wehmeyer claimed that on June 5, 1961, when Noelker was at the farm, he asked Noelker if he got the money he owed Noelker whether he could have the place back, and that Noelker answered "No." Wehmeyer admitted that he was with Hellebusch when the survey was made but denied that they had told him what they were there for and stated that he did not ask. He also conceded that he saw the contractor's employees bring in bulldozers and other heavy equipment, and when questioned by the court denied that he had ever asked them what they were doing, even though he considered that the farm was his. Noelker denied that Wehmeyer had ever made any offer to pay what was due in an effort to redeem.

The evidence showed that the dam was completed and a partially new road constructed, and that Wehmeyer made no objection until graveling of the old and new portions of the road began. At that point he stopped further work by blocking the road, and consulted an attorney. Plaintiffs' evidence showed that they had expended the sum of $4,765.02 in the construction of the dam and road, and for taxes and insurance for two years. It appears that the dam did not leak, but that the water seeped out through a defect or fault in the rock structure underlying the lake bed, and reappeared about a quarter of a mile away on an adjoining farm. However, there was testimony by the contractor that such defects often corrected themselves, or, if not, that the leak could easily be sealed off.

There was a wide variance in the testimony regarding the effect that the lake and dam, and the work on the road, had had on the value of the farm. Noelker testified that in his opinion the property was worth only $2400 at the time it was conveyed to plaintiffs in October, 1960, and that its fair market value after the work was done was $8,000 or $8,500, which in-

dicated an enhancement of $5600 or $6100. Hellebusch, on behalf of plaintiffs, testified that the sum of $4246.74 which plaintiffs had paid him was a fair and reasonable charge for the work that was done, and that the farm was improved by more than that amount, but he could not qualify as an expert on property values and disclaimed any knowledge about land sales. Melvin Rapp, a real estate broker, who was called to the stand by plaintiffs, estimated the 1960 value at $5700, expressed the view that the dam and lake added nothing to the value of the farm, and was of the opinion that the work on the road increased the value of the real estate by only $1500. Wehmeyer testified that in his opinion the property was worth $9000 on October 24, 1960, and that after the building of the dam and the work on the road, its fair market value was only $2000, thus claiming there had been a decrease in value of $7000. Tony Krause, called by defendants, who lived seven miles distant from the property in question and qualified as an expert on farm values, after some difficulty, expressed the opinion that the farm was worth around $11,000 in October, 1960, but he was not asked and did not give an estimate of its after value.

We cannot agree with defendants' first contention that the court erred in conditioning their right to a reconveyance of the property upon their reimbursing plaintiffs for whatever amount by which the value of the land had been enhanced because of the money plaintiffs expended thereon. Assuming, without deciding, that plaintiffs were not bona fide purchasers, as defendants contend, it does not necessarily follow that plaintiffs were guilty of bad faith or that they were not entitled to recover. Johnson v. Stull, Mo., 303 S.W. 2d 110. On the contrary, the evidence was that plaintiffs had agreed on October 23, 1960, to the transfer of the property to them on the express condition that they could make the improvements thereon and that, if defendants subsequently wanted the farm back, that defendants would reimburse

plaintiffs for the improvements made. Furthermore, the evidence showed that before commencing the work on the dam and the road plaintiffs notified defendants of their intentions to do so, and, when they received no answer from defendants, in good faith believed that defendants did not want the property back. Also, defendants not only failed to indicate that they desired to redeem the farm, but they stood idly by without objecting when the work began, and, in fact, at first assisted therein. We, therefore, concur in the findings of the trial court that the plaintiffs expended the money for the improvements "with the knowledge and consent of defendants." Under these circumstances, to have ordered plaintiffs to reconvey without requiring defendants to reimburse plaintiffs for whatever amount by which the value of the land had been enhanced would have been highly inequitable and would have unjustly enriched the defendants. McLean v. Martin, 45 Mo. 393; Calloway Bank v. Ellis, 215 Mo.App. 72, 238 S.W. 844; Toalson v. Madison, Mo.App., 307 S.W.2d 32.

As to defendants' second point, the rule is that the compensation to be allowed is the amount by which the value of the land was enhanced by the improvements. McAboy v. Packer, 353 Mo. 1219, 187 S.W.2d 207; Rains v. Moulder, 338 Mo. 275, 90 S.W.2d 81. Whether the farm was in fact enhanced by the dam and road, and if so, by what amount, was primarily a question of fact for the decision of the trial court. Johnson v. Schwarz, Mo., 349 S.W.2d 56. As we have noted, the evidence covered a wide range, from an estimated enhancement of $6100 to an estimated decrease in value of $7000. The trial court had the witnesses before it and was in a far better position to judge of their credibility than we are. Absent any reason in the record which would indicate that we should not do so, we defer to the findings and judgment of the trial court. McAboy v. Packer, supra; Agers v. Reynolds, Mo., 306 S.W.2d 506; Bruns v. Uebel, Mo., 318 S.W.2d 324.

No error having been shown, the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this Court.

The judgment of the trial court is, accordingly, affirmed.

ANDERSON, Acting P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.