**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF MISSOURI,**
Plaintiff–Respondent,

v.

**J.O. WILLS and Mildred Farris,**
Defendants–Appellants.

No. 16253.

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 1990.

Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for plaintiff-respondent.

Ted M. Henson, Jr., Poplar Bluff, for defendants-appellants.

MAUS, Judge.

The plaintiff in this ejectment action, First Federal Savings & Loan Association of Missouri (First Federal), established its title to the property through the foreclosure of a deed of trust. The mortgagors deeded a part of that property to defendant J.O. Wills and a part to defendant Mildred Farris. At trial defendants presented evidence of the cost of improvements made to those parts while in their possession. The trial court found all issues in favor of the plaintiff and entered a judgment for possession and an injunction. The defendants appeal.

The following is a synopsis of the facts sufficient for the disposition of this appeal. Virgil H. Bell and Melbelene Bell owned 5.4 acres. They borrowed $35,500.00 from First Federal. To secure that loan, they executed a first deed of trust of that property in favor of First Federal. The deed of trust was duly recorded. Thereafter, the Bells conveyed .5 acres of that tract to Farris and subsequently .6 acres to Wills. These parts did not include the tract upon which the Bell house was located. The defendants took possession of their respective tracts. They made improvements in the form of driveways, pumps, and clearing at a cost of $10,942.00.

First Federal had no knowledge of these conveyances or the improvements until a search of the records preparatory to foreclosure. It gave the required notice of foreclosure, including notice to Farris and Wills. Donald Harris and Penny Harris, his wife, bought the property at the foreclosure sale for $37,719.74. There was no deficiency upon the note. When the Harrises discovered Farris and Wills would not surrender possession of their tracts, they conveyed the property to First Federal. It was agreed First Federal would obtain possession of all the real property and reconvey it to the Harrises. The defendants do not question the status of First Federal to maintain this action. That issue is not considered.

■▬▬ The defendants' point on appeal is "[t]he trial court erred in its decree in not ordering Appellants Farris and Wills reimbursed for the $10,942 in improvements which they had made to the property in question on the ground that reimbursement should be ordered in equity and good conscience and to prevent First Federal (ultimately the Harrises) from being unjustly enriched." The defendants did not, by answer or counterclaim, plead the legal theory upon which they predicate their right to reimbursement. Nor does their brief clearly articulate a legal basis for recovery. They emphasize their good faith and the power of equity to prevent unjust enrichment at their expense. They cite cases such as *Noelker v. Wehmeyer*, 392 S.W.2d 409 (Mo.App.1965) and *Kugel v. Knuckles*, 95 Mo.App. 670, 69 S.W. 595 (1902). Cases such as *Noelker* are based upon the common law doctrine of equitable estoppel. Cases such as *Kugel* are based upon a statutory provision similar to the present statute:

"If a judgment or decree of dispossession shall be given in an action for the recovery of possession of premises, or in any real action in favor of a person having a better title thereto, against a person in the possession, held by himself or by his tenant, of any lands, tenements or hereditaments, such person may recover, in a court of competent jurisdiction, compensation for all improvements made by him *in good faith* on such lands, tenements or hereditaments, *prior to his having had notice of such adverse title.*" § 524.160. (Emphasis added.)

It is possible to find cases that give that statute the following construction.

"When the controversy is between the record owner of land and a defeated occupant seeking pay for improvements, such *constructive notice* of the adverse title will not impeach the good faith of the occupant in putting betterments on

the land, and this can be done only by proof that he had *actual notice of the successful title* when the improvements were made." *Richmond v. Ashcraft,* 137 Mo.App. 191, 199, 117 S.W. 689, 692 (1909). (Emphasis added.)

The defendants rely upon this construction when they contend they made the improvements "in good faith" within the meaning of the statute because they had no actual knowledge of the deed of trust even though the deed of trust was of record.

Such a construction is at odds with generally accepted principles. The following statute is fundamental to the status of titles of real property.

> "Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." § 442.390.

It is generally acknowledged " 'notice' and 'good faith' cannot coexist". *Richmond,* 117 S.W. at 692.

Even a purchaser for full value without actual knowledge of a deed of trust takes subject to a deed of trust on record before he pays value. *Lewis v. Gray,* 356 Mo. 115, 201 S.W.2d 148 (1947). Cf. *Westinghouse Elec. Co. v. Vann Realty Co.,* 568 S.W.2d 777 (Mo. banc 1978), involving the mechanic's lien of a material supplier.

An analysis of the cases demonstrates that often an award for improvements has been granted in circumstances in which one in possession made those improvements in a good faith reliance upon a good record title, even though there was in fact a better adverse title.

> "[W]e think the argument for the proposition that compensation ought to be refused when the occupant had notice is unanswerable, if he not only knew of the outstanding title, but was not led by the holder to believe it would never be as-

serted in hostility to his own." *Richmond,* 117 S.W. at 694.

"The Richmond case lays down three propositions: (1) as regards his *title* the occupant is bound with *constructive* knowledge of a prior recorded conveyance in the chain of title, even though he purchased in good faith". *Martin v. McCabe,* 358 Mo. 118, 126, 213 S.W.2d 497, 501 (1948). (Emphasis in original.)

In those cases, the terms in the statute "notice of such adverse title", are construed to mean actual notice of an adverse claim which was not disclosed by the record. Such circumstances exist where improvements are made upon the basis of an error in the location of a legal description, *Toalson v. Madison,* 307 S.W.2d 32 (Mo.App.1957), or there is a latent defect in the title not disclosed on the record. *Richmond v. Ashcraft,* supra; cf. *Seibel v. Higham,* 216 Mo. 121, 115 S.W. 987 (1908). It has been argued that one who makes improvements charged with constructive notice of a better title cannot recover under the statute, but only by an equitable estoppel arising from the owner's silence when he was under a duty to speak.

However, further discussion of the relationship between constructive notice and "good faith" as used in § 524.160, is not necessary. The statute embodies the common law remedy to the extent it is based upon the acquiescence of the holder of the adverse title. *Toalson v. Madison,* supra. The constitutionality of the statute has been upheld on that basis. *Tice v. Fleming,* 173 Mo. 49, 72 S.W. 689 (1903). One making improvements may not recover at common law or under the statute unless the holder of the adverse title has knowledge of the improvements.

> "The owner's knowledge that improvements were being made is an essential element to the equitable theory of betterment. See *Toalson v. Madison,* 307 S.W.2d 32, 35[3] (Mo.App.1957). Without any evidence to show respondent was aware that the Westbrooks were making improvements upon lot 14, the better-

ment statute is inapplicable to the case at bar." *Chicago Title Ins. v. Farmers Ins. Co.,* 734 S.W.2d 887, 890 (Mo.App. 1987).

The undisputed evidence was that First Federal had no notice of the improvements. It should also be noted that a mortgagee has no power to forbid improvements, *Masterson v. The West End Narrow Gauge Railroad Company,* 72 Mo. 342 (1880), and that a recovery under the statute has been limited to an independent action. *Staub v. Phillips,* 307 Mo. 576, 271 S.W. 365 (1925). The judgment of the trial court was supported by the evidence and is not erroneous. It is affirmed.

FLANIGAN, P.J., and HOGAN, C.J., concur.

SHRUM, J., not participating because not a member of the court when case submitted.