Richard B. GLOBUS,
Appellant-Respondent,

v.

Bruce W. SIMON and Paul R. Katz and the Waltower Building Corporation, Respondents-Appellants.

No. WD 31612.

Missouri Court of Appeals,
Western District.

Jan. 5, 1982.

Gordon R. Gaebler, Kansas City, for appellant-respondent, Richard B. Globus; Svoboda & Gaebler, Kansas City, of counsel.

David Waldman, Kansas City, for respondents-appellants.

Before CLARK, P. J., and PRITCHARD and WASSERSTROM, JJ.

PRITCHARD, Judge.

This suit arises out of a claim by appellant, Globus, a practicing attorney, against respondents, Simon and Katz, also practicing attorneys, for an award for a finder's fee in connection with respondents' purchase of a note secured by a deed of trust upon the Waltower office building, 823 Walnut Street, Kansas City, Missouri, which purchase was accomplished for $30,-000, and subsequently a deed was obtained from the mortgagors in lieu of foreclosure for $10.00 which vested title to the building in respondents. Globus also claimed and is claiming that he is entitled to specific performance of a contract for a lease in return for his services as a finder in procuring the note and deed of trust which he says was to have been a floor of the Waltower Building of his choice "of the first two floors" to be given him on a ninety-nine year lease at a price of $1.00 per year, all expenses paid, except for leasehold improvements that he might make. He says his choice was the eleventh floor of the building. Globus' third point (additional to the claim for specific performance and that of inadequacy of the judgment in quantum meruit below mentioned) is that the court erred in denying recovery for "unjust enrichment or restitution" because a definite contract was established. The note was in the original amount of $325,000, and at the time of its purchase, it was unpaid in the amount of $168,000.

There appears to be no question but that Globus was solely instrumental in effectuating the purchase. His contention is as to the form or amount of his compensation for his services. The trial court gave him judgment for $12,500 on his pleaded theory in quantum meruit, which he contends is inadequate. Respondents, on their cross-appeal, claim that the judgment is excessive by $9,500.

For sometime prior to March, 1978, Globus, who officed with Simon and Katz in the Waltower building, had been doing some legal work for them. On March 4, 1978, he learned from an acquaintance that the note and deed of trust on the building might be purchased at a discounted price, and he was referred to Ken Riedemann at a mortgage company on Wornall Road. After talking to Riedemann, Globus talked with some people who might be interested in purchasing the note. On March 13, 1978, he discussed the note purchase with Simon, and on March 16, 1978, with both Simon and Katz, at which time maintenance costs of the building were discussed, and according to Globus, his finder's fee of a 99 year lease on any floor of his choice at $1.00 a year was discussed and agreed to by them,

that matter being brought up by him. A little later, Katz asked Simon why Globus wanted a 99 year lease on a floor, and Simon responded that Globus wanted a little retirement fund. Simon and Katz decided to make an initial offer of $30,000 for the note, and on March 20, 1978, gave Globus a check for that amount, and it was accepted by the seller on April 13, 1978. Subsequently, Globus formed a corporation to hold title to the building, "The Waltower Building Corporation", and the record shows that he performed various other duties for the respondents. According to Globus, he employed architect Greis to make drawings of the 11th floor of the building which Globus had selected as his fee. Globus' testimony was further that Simon agreed that he had a floor but Katz did not want to give him one. Simon suggested that Globus would get the pick of an office for life, but that was unacceptable. Simon suggested a shorter term, about 50 years, but that was unacceptable. Then Simon stated that Globus would have the 99 year lease on the floor, but he would have to pay what they determined to be overhead—heat, light, janitorial, and so on, but that was unacceptable to Globus. Quite apparently, this conversation, to which Katz was not a party, took place some time after the building note and mortgage were purchased, but Globus testified that at all times Simon and Katz "understood what the fee was" by March 16th, and agreed to it. He could not recall the exact conversation on that date, or that Katz said anything on it, so it adds little as to what the original agreement was.

Both Globus and Greis testified that a conversation took place with Simon and Katz present, that Globus said the 12th floor had less square footage, and Katz said, "You can have any floor but the twelfth. That is the command floor. You shall never be working above me."

According to witness Susan Womack, she recorded and transcribed a telephone message from Katz: "Dear Mr. Globus: Regarding The Waltower Building Corporation: Pursuant to your actions of yesterday, I must warn you that I myself will stop the Deed from going through your name as secretary of the corporation for THE WAL-TOWER BUILDING CORPORATION. On this proposed Deed, you have abused your trust and your fiduciary duty to the corporation and myself and I am prepared to take you to the bar committee if your name appears on any future correspondence as secretary or on this Warranty Deed. I no longer wish to have any dealings with you with regard to this corporation. Anything you wish to say to me can be made to the intermediary, Bruce Simon. I am prepared to pay you for your floor to get you out of my building. Sincerely, Paul R. Katz Half-Owner of The Waltower Building."

For respondents, Bruce Simon testified: He heard that the note was for sale from either Globus or Katz sometime in the middle of March, 1978, and they made the tender of $30,000 for it. Prior to that time Globus had furnished information showing the cash flow and tenancy of the Waltower building, showing a loss of about $4,500 per year, but subsequent information showed the actual loss to be closer to $20,000 or $25,000 per year. "Q. At this particular time when you were furnished this information, did you discuss with Mr. Globus a fee for his services? A. Mr. Globus advised me that he expected to be paid for providing the services in connection with the acquisition of the note, and hopefully, ultimately, the building. I said that was fine. We expected to pay him." Several modes of payment were discussed: The possibilities of a lease for one floor without details as to how it was to be held or who was to pay the expenses; Globus discussed the 99 year lease. Simon did not agree or disagree, but simply listened to the modes of payment. Other methods discussed were a cash payment and the possibility of shares in the corporation, but no number was discussed. There was no agreement as to what Globus' fee would be. Later, there were discussions, but without agreement, of a cash payment, or an interest in office space for life or a term of less than 50 years with Globus paying the operating expenses on those premises. Simon was unwilling to

enter a 99 year lease because it would be an encumbrance on the building if it was sold. He did not recall the 99 year lease being discussed in architect Greis' presence. About May 3, 1978, Globus was handling the management services for the building for a short time. Simon testified further that he had to act quickly in order to acquire the building, and did so without reaching any particular agreement with Globus other than very general conversation involving three methods of payment.

Paul Katz testified that a few days before March 20, 1978, Globus told him that it might be possible to get hold of the note and deed of trust. There was no mention at that time of a fee, but Globus did say that he expected to be paid. There was no agreement as to what he should be paid or how it would be done. Shortly before the purchase of the note and deed of trust was consummated, Katz returned from a vacation in Tahiti, Globus mentioned to him about having an office in the Waltower building as his fee, and a few days later he discussed with Katz about having a floor, and a few days even later, a 99 year lease, and later modified the request for a 99 year lease to have all expenses paid by Simon and Katz. None of these proposals were agreed to by Katz. There was another proposal Globus made with regard to cash, but he never mentioned a specific amount. As to the telephone message taken by Susan Womack, Katz testified that he meant that he was prepared to pay Globus cash to get him out, that he was entitled to a fee which Katz had never denied.

■■ Respondents raise the defense of the statute of frauds, § 432.010, RSMo 1978. Assuming, however, that Globus' testimony established an underlying contract, his performance thereunder would remove the oral agreement (if it can be found that there was one) from the operation of the statute. *Koman v. Morrissey*, 517 S.W.2d 929, 935[8] (Mo.1974), and cases and authority cited. What is here lacking in view of the conflicting testimony as to Globus' compensation is the existence of a contract to convey to him a 99 year lease on the 11th floor of the Waltower building, free of expenses. "Specific performance presupposes the existence of a complete and concluded contract." *Ellison v. Wood Garment Company*, 286 S.W.2d 27, 30 (Mo.App.1956). And at the same place, it is said, "In short, a court of equity will not decree specific performance of a contract which is uncertain, incomplete or indefinite in terms or intendment." The trial court was not required to believe Globus' testimony that Simon and Katz agreed to his 99 year lease proposal which he says was done prior to the acquisition of the note and deed of trust. Respondents' testimony is to the contrary, but both Simon and Katz agreed that Globus was entitled to a fee, and the trial court was entitled to accept that version in finding that there was no contract for a lease as it did. This court will defer to the trial court findings resting on a judgment as to the credibility of witnesses. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483[1–4] (Mo.banc 1980), and cases cited as to all the considerations in a court-tried case on appeal.

■ Globus seeks recovery on the theories of unjust enrichment and restitution. Nothing has been taken from him to which he was entitled which would bring into play the earlier common law application of restitution, but it can, in conjunction with the concept of unjust enrichment, be applied where there is a retention of a benefit, as under a contract, to the loss of another. See 66 Am.Jur.2d Restitution and Implied Contracts, § 1, et seq., p. 942, et seq. And note that an action in quantum meruit rests on the principle that no one ought to enrich himself unjustly at the expense of another. *Cavic v. Missouri Research Laboratories, Inc.*, 416 S.W.2d 6, 8[1, 2] (Mo.App.1967). Thus the claim of unjust enrichment and restitution may be considered in relation to Globus' last point of an inadequate award in quantum meruit, and also along with respondents' contention that the $12,500 award is excessive because it is not supported by the evidence.

■ In the *Cavic* case, supra, it was said also that the burden to prove the reasonable

value of the services he rendered is on the plaintiff, and at page 9[5–8], it is said, "The reasonable value of services as that term is employed in actions in quantum meruit is ' * * * the price usually and customarily paid for such services or like services at the time and in the locality where the services were rendered. * * * ' (Citing case)." Respondents concede that Globus rendered services in procuring the note and mortgage and that he is entitled to a fee. As to that entitlement, Globus produced Albert Margolin, an independent fee appraiser, whose testimony in substance is this: He used the income approach to appraise the Waltower building. There was, on May 1, 1978, 46,452 square feet of rentable space with 70% actually rented, or 32,599 square feet. From the Building Owners and Managers Association (B.O.M.A.) reports of other older downtown buildings available to him, he used operating expenses of 70% applied to what he testified as $4.00 per square foot for the economic rent or market rent. "I established what we call a stabilized cash flow, 32,599 square feet at $4.00 produces $130,396.00. Operating expenses of seventy percent is $91,277.00 and leaves net profits of $39,119.00. It capitalizes at ten percent and comes to $391,119.00, and I rounded it to $390,000.00." He was aware that there were spaces which were leasing for less than that ($4.00), but assuming good management, $4.00 a foot is what it will get. The building was between 40 and 50 years old. For a finder's fee, he gave figures of 20%, 25% and 30% of the action.

Contrasting Margolin's testimony with that of Katz produces different results as to the value of the building on a capitalization basis. Katz testified the gross annual income of the building was about $80,000 in March or April, 1978. Defendants' Exhibit 18 lists the cash expenses per annum, which add up to $66,377.00 (not $102,861.00 as set forth on the exhibit). Excluding depreciation, this would produce an annual net profit of about $13,623.00, which if capitalized at 10%, would give a value of $136,623.00 for the building, and the court's award of $12,500 to Globus would amount to about 9% of that figure for his services, whether they be attorney's services or a finder's fee, or a combination of both, and the same does not seem to be unreasonable. Nor is there any basis to say that the award is inadequate or excessive as contended by the parties respectively. "Recovery in quantum meruit for services performed is limited to the reasonable value of the services. *See St. Charles Floor Co. v. Hoelzer*, 565 S.W.2d 844 (Mo.App.1978); *Vosevich v. Doro, Ltd.*, 536 S.W.2d 752 (Mo.App.1976). The question in such case is whether the evidence is sufficient to support the trial court's judgment that the plaintiff's charges were reasonable." *Curnow v. Sloan v. Blue Shield*, 625 S.W.2d 605 (Mo.banc 1981) (No. 62987, handed down December 8, 1981.) Although the evidence here as to what might be a reasonable fee is far from precise, considering the figures before the trial court, and respondents' concession that a fee was due Globus, there exists no firm belief that its award is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The judgment is affirmed.

All concur.