**CHICAGO TITLE INSURANCE COMPANY, Plaintiff-Appellant,**

**v.**

**FARMERS INSURANCE COMPANY, INC., Defendant-Respondent.**

**No. 52164.**

Missouri Court of Appeals, Eastern District, Division One.

June 23, 1987.

Motion for Rehearing and/or Transfer Denied July 30, 1987.

Application to Transfer Denied Sept. 15, 1987.

Robert C. Jones, Clayton, for plaintiff-appellant.

Paul E. Kovacs, Clayton, for defendant-respondent.

KELLY, Judge.

Chicago Title Insurance Co. appeals from the judgment of the trial court which found for respondent Farmers Insurance Co. and dismissed appellant's petition. An understanding of the issue requires us to detail the tortuous factual background of this litigation.

From the stipulated facts submitted by the parties, the trial court could reasonably have found the following. In 1976, Walter and Virginia Leutzinger executed a promissory note secured by a deed of trust on a piece of property, (hereinafter referred to as "lot 14") in Camden County, Missouri. The deed of trust named William and Juanita Young as third party beneficiaries.

In 1977, Paul Howard purchased a one-half interest in lot 14 from the Leutzingers, and subsequently in 1979, Howard purchased the remaining one-half interest. We infer from the record that when Howard purchased the property from the Leutzingers, he became liable on the promissory note of which the Youngs are the third party beneficiaries.

In 1981, Paul Howard purchased a home-owners insurance policy from respondent Farmers, insuring his property. The insurance policy named the Youngs as loss payees since they were the mortgagees on the deed of trust.

On April 11, 1981, the property was destroyed by fire. Farmers paid the Youngs $32,908.20 under the loss payee clause contained in the insurance policy. Shortly thereafter, the Youngs assigned their interest in the property by conveying their interest in the promissory note and deed of trust to respondent Farmers. The promissory note obtained by Farmers had a value of approximately $32,000.00. This assignment between the Youngs and Farmers was recorded in Camden County on March 18, 1982. At the time of the assignment, the appraised value of lot 14 was $13,500.00. It is important to note that Paul Howard's obligation on the promissory note was still outstanding at the time of the assignment to Farmers.

On January 29, 1983, David and Phyllis Westbrook purchased lot 14 from Paul Howard. At the time of purchase, the following documents were in the chain of title:

1. An affidavit of Loss or Destruction of Note filed by Mr. and Mrs. Young, recorded in Camden County on June 7, 1982;

2. A deed of release filed by Mr. and Mrs. Young, recorded in Camden County on June 7, 1982; and

3. An affidavit by the owner, Paul Howard, stating that the note had been paid, recorded in Camden County on June 7, 1982.

The Westbrooks were unaware that their property was encumbered by the deed of trust now held by respondent Farmers. When the Westbrooks purchased lot 14, appellant Chicago Title issued a policy of title insurance to the Westbrooks, and insured fee simple title to the Westbrooks free of the lien of the deed of trust.

The Westbrooks constructed a duplex on lot 14, and on December 2, 1983, the property had a fair market value of approximately $100,000.00. On October 19, 1983, the Westbrooks first learned that their property was encumbered by the deed of trust held by Farmers. The record reveals that Paul Howard failed to pay Farmers on the promissory note between March 18, 1982, and December 2, 1983, and thus, the land was advertised to be sold at a foreclosure sale on December 2, 1983.

We infer from the record that the Westbrooks made demand on Chicago Title on or about November 23, 1983, to stop the foreclosure sale. On November 30, 1983, Chicago Title filed a petition to enjoin the trustee's sale in the Circuit Court of Camden County. On December 1, 1983, the court denied appellant's request for a temporary restraining order, and the foreclosure sale was scheduled to proceed on December 2, 1983. On December 2, 1983, the promissory note had a value of $37,859.77, which included the value of the promissory note, accrued interest, publication costs, and trustee's fees. To halt the foreclosure sale, Chicago Title paid Farmers $37,859.77, the outstanding amount on the promissory note, in exchange for Farmers' assignment of the deed of trust to Chicago Title and the Westbrooks.

Chicago Title then filed a petition in damages against respondent Farmers under a theory of unjust enrichment. In a court-tried case, the trial court found in favor of respondent Farmers.

We affirm the judgment of the trial court.

Our standard of review in this court-tried case is that the judgment will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976).

On appeal, Chicago Title contends the trial court erred when it entered judgment in favor of respondent Farmers in that Farmers was unjustly enriched with respect to all monies received in excess of the fair market value of lot 14 in its unimproved state.

At the time of the assignment, lot 14, in its unimproved state, had an appraised value of $13,500.00. Respondent Farmers paid the Youngs, as mortgagees, under the loss payee clause $32,908.20. Respondent took an assignment of the deed of trust and promissory note from the Youngs. Paul Howard, who was liable on the promissory note now held by Farmers, failed to make a payment subsequent to the assignment.

The crux of appellant's argument is that had Farmers foreclosed subsequent to the assignment, and immediately upon default, Farmers would have received approximately $13,500.00. However, Farmers did not foreclose upon lot 14 for nearly 21 months, during which time David and Phyllis Westbrook erected improvements upon the land, far in excess of the value of the security at the time of the assignment to respondent. Farmers received $37,859.77 from Chicago Title at the time of foreclosure, which included the value of the promissory note, accrued interest, publication costs and trustee's fees.

Chicago Title contends it should recover $24,359.77, representing the amount which its payments exceeded the fair market value of lot 14 at the time the note and deed of trust were assigned to Farmers. Appellant seeks recovery based on a quantum meruit theory—a theory grounded on the principle that no one should be unjustly enriched at the expense of another. *See Globus v. Simon,* 627 S.W.2d 106, 109[6] (Mo.App.1982); *Vosevich v. Doro, Ltd.,* 536 S.W.2d 752, 756[3] (Mo.App.1976).

To avoid unjust enrichment, the law implies a promise to pay for services rendered when the evidence discloses that *"one who rendered services* did so under circumstances warranting a proper inference that *he expected the recipient of the services to pay for them,* and that the latter, in accepting benefit of the services, *was or should have been aware* that they were being performed with such expectation." *State ex rel. Danforth v. Kansas City Firefighters Local 42,* 585 S.W.2d 94, 97[3] (Mo.App. 1979). (emphasis added).

Neither the Westbrooks nor Chicago Title rendered services expecting to be compensated. Chicago Title paid off the promissory note pursuant to its obligation to protect its insured. Furthermore, the Westbrooks improved lot 14, expecting only to increase the value of their own property—not that of another. Moreover, there is no evidence, other than the bare allegations in the petition, to support an inference that Farmers was or should have been aware that the Westbrooks were constructing the duplex.

■ We note that the record indicates that the agents of Chicago Title who performed the title search on lot 14 were aware of the deed of trust and the full deed of release, as both transactions were duly recorded in Camden County. Chicago Title's agents insured fee simple title on lot 14 to the Westbrooks, free of any lien of the deed of trust then owned by Farmers. Farmers had the right to foreclose on the property, due to Paul Howard's failure to make payments on the promissory note. Appellant was notified of the foreclosure sale on November 23, 1983. Appellant chose to settle with Farmers for the sum of $37,859.77 in order to avoid potential liability to the Westbrooks had the foreclosure sale gone through. Given the nature of a cause of action in equity, we are not persuaded that Farmers was unjustly en-

riched, as it received only the amounts due and owed on the promissory note, plus costs and interest.

Appellant cites the Missouri Betterment Statute, § 524.160 RSMo 1978 [1] in support of its position that Farmers was unjustly enriched. Appellant concedes that § 524.-160 RSMo 1978 has been restricted to actions in ejectment, however, appellant argues that the equitable rationale of the betterment statute would still apply to the facts of the case at bar. We disagree.

■ The owner's knowledge that improvements were being made is an essential element to the equitable theory of betterment. *See Toalson v. Madison,* 307 S.W.2d 32, 35[3] (Mo.App.1957). Without any evidence to show respondent was aware that the Westbrooks were making improvements upon lot 14, the betterment statute is inapplicable to the case at bar.

Appellant suggests that it is subrogated to the rights of the Westbrooks. In light of our determination that respondent's retention of the $37,859.77 does not constitute unjust enrichment, we need not address the issue of subrogation.

We affirm the judgment of the trial court.

SATZ, P.J., and CRIST, J., concur.

---

1. Section 524.160 Defendant may recover compensation for improvements, when

If a judgment or decree of dispossession shall be given in an action for the recovery of possession of premises, or in any real action in favor or a person having a better title thereto, against a person in the possession, held by himself or by his tenant, of any lands, tenements or hereditaments, such person may recover, in a court of competent jurisdiction, compensation for all improvements made by him in good faith on such lands, tenements or hereditaments, prior to his having had notice of such adverse title.