**Thomas D. STEEN and Loretta F. Steen, Plaintiffs–Respondents,**

v.

**Mario COLOMBO and Elizabeth Colombo, Defendants–Appellants,**

**and**

**Bank of Iberia, Intervenor–Respondent.**

No. 16550.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 12, 1990.

Motion for Rehearing or Transfer
to Supreme Court Denied Nov. 2, 1990.

Application to Transfer Denied
Dec. 18, 1990.

James W. Gallaher, Carson & Coil, P.C., Jefferson City, for defendants-appellants.

John R. Lewis, Springfield, for plaintiffs-respondents.

William C. Morgan, Waynesville, for intervenor-respondent.

HOGAN, Judge.

Defendants Mario and Elizabeth Colombo appeal from a decree of the Circuit Court of Camden County quieting the title to a tract of land in plaintiffs Thomas D. and Loretta F. Steen. We affirm.

One aspect of this controversy has been before this court, see *Steen v. Colombo*, 722 S.W.2d 648 (Mo.App.1987), although this appeal is not, strictly speaking, a second appeal. Unfortunately, a rather extensive recital of the background facts is necessary to an understanding of the rationale of the opinion.

I

A

At issue is the title to two lots which are part of Cornett Cove No. 5, a subdivision in Camden County, Missouri. In March 1984, plaintiffs Thomas and Loretta Steen purchased Lot 1110 for $27,500. The findings of fact of record on the first appeal [1] recite that the Steens thereafter entered into possession of a tract of land they believed to be Lot 1110, cleared the tract and began to construct a dwelling on it. It was further

---

1. The defendants have moved this court to take notice of its file and the record in *Steen v. Colombo*, Appeal No. 14757. We can and shall take notice of the record which was before us in *Steen v. Colombo*, 722 S.W.2d 648, particularly in view of the fact that this appeal presents another aspect of the same controversy. Cf. *Bloecher v. Duerbeck*, 338 Mo. 535, 552, 92 S.W.2d 681, 689[9] (1936).

found that in determining the location of the lot they believed to be Lot 1110, the Steens relied on the boundary markers placed by the subdivision developer and the broker through whom they purchased the lot. The trial court also found as a fact that the developer had erroneously placed the boundary markers on which the Steens had relied and that the Steens were not negligent in relying on the boundaries marked by the developer or the representations made by the broker who sold them the lot. In any event, in July 1984 the plaintiffs were notified that the lot they were improving was Lot 1111, which was owned by the Colombos, not Lot 1110 which the plaintiffs had purchased. The lots are adjoining lots, substantially the same size and configuration.

Upon the first trial, plaintiff Thomas Steen testified that "including interest" he had spent $81,101.33 improving the lot he believed to be his. He also testified on the first trial that, having discovered he was improving the wrong lot, he approached defendant Mario Colombo and offered "to make some kind of a settlement—trade lots or do something." Colombo declined. Colombo acknowledged that Steen had suggested "we should swap lots," but "it wasn't that simple" because he, Colombo, "still had a note on the lot." The parties were unable to resolve their differences and the Steens filed suit. The petition, as we noted on the prior appeal, asked for a declaration of the rights of the parties, and further requested that if the court should determine that defendants Colombo had title to Lot 1111 and a right to possession, the Steens be compensated for the value of the improvements they had placed on the lot, and that, if such value was greater than the value of Lot 1111, the defendants be compelled to convey the lot to the plaintiffs upon plaintiffs' payment of the value of the lot to defendants Colombo. The defendants filed an answer which, as we noted on the first appeal, was in the nature of a general denial. However, with leave of court and on September 16, 1985, the defendants undertook to amend their responsive pleading so as to state two affirmative counterclaims against the plaintiffs. On October 16 these counterclaims were stricken on plaintiffs' motion. No affirmative counterclaim by defendants Colombo was before the court when the cause was called for hearing.

Evidence was heard on two occasions, first on October 16, 1985, and again on November 13, 1985. Findings of fact and conclusions of law were specifically requested, and those findings and conclusions, together with a judgment, were entered and filed on December 27, 1985. Noting that no counterclaim was then before the court, the trial court concluded, among other things, that the plaintiffs should be permitted to tender the sum of $32,000 within 60 days of the entry of the decree, and that the defendants should, within 60 days of the tender, execute and deliver to the plaintiffs a deed and such other instruments as were necessary to convey marketable title to Lot 1111 to the plaintiffs. It was provided that the judgment should be interlocutory for such time as was necessary for the parties to execute the judgment and for such further time as might be necessary to enforce the judgment if the provisions thereof were not complied with.

Both parties moved the court to amend its judgment, as permitted by Rule 73.01(a)(3).[2] Defendants Colombo combined their motion to amend judgment with a motion for new trial and prayed the court to hear further evidence pursuant to Rule 78.01. On March 11, 1986, attorneys for the defendants stated in open court that the defendants would not tender a warranty deed even if plaintiffs tendered payment as required by the decree. The court's judgment was amended to incorporate the findings of fact and conclusions of law previously made, and defendants Colombo were ordered to execute and deliver to the plaintiffs a warranty deed conveying a marketable title to Lot 1111. It was ordered that the plaintiffs simultaneously pay the defendants the sum of $32,000, less any indebtedness outstanding against the

2. All references to statutes and rules are to RSMo 1986 and V.A.M.R.

lot, and that plaintiffs hold the defendants harmless on that obligation.

## B

This appeal is focused upon the effect of the parties' execution of the modified decree. In this connection, it should be understood that after our mandate was filed in the circuit court, the Bank of Iberia moved to intervene and was allowed to do so. A good many motions of one sort or another were filed, but eventually and on November 17, 1987, the defendants were allowed to file an amended counterclaim against the plaintiffs and a crossclaim against the Bank of Iberia. The Bank of Iberia was also permitted to file a counterclaim and crossclaim, and responsive pleadings were filed by the plaintiffs. These counterclaims and crossclaims were later amended but the trial court's docket entry of March 30, 1989, reflects that the trial we now review was a trial of pending counterclaims and crossclaims in the nature of an action to quiet title. Indeed, the court began this trial by asking whether "... this is a hearing on pending counterclaims and crossclaims all of which are in the nature of quit [sic] title actions." Counsel for the defendants and for the intervening defendant, the Bank of Iberia (the bank), answered affirmatively. The trial court heard evidence and thereafter entered a decree quieting title to Lot 1111 in plaintiffs Thomas D. Steen and Loretta F. Steen, subject to a deed of trust dated April 15, 1986, securing payment of a promissory note bearing the same date. The court also exercised its discretion pursuant to Rule 74.01, expressly determining that there was no just reason to delay entry of a judgment on the counterclaims and crossclaims and further determining that its judgment should be regarded as final for purposes of appeal, as permitted by Rule 74.01(b).[3]

Nonetheless, and to reiterate, on trial and on this appeal the parties have been almost entirely concerned with the action taken by the defendants in complying with the order entered on the first trial. This action was taken *before* the notice of appeal was filed on the first appeal, but we are obliged to consider it.

The defendants' attorney, Mr. Donald Schreimann, asked his clients to come to his office after he was advised of the terms of the amended decree the trial court proposed to enter on March 18, 1986. According to Schreimann, he and the defendants discussed "the fact that [defendants] had to deliver a warranty deed free and clear of all encumbrances which would include an existing deed of trust that was due and owing to [the developer]." Therefore, when plaintiffs delivered the check for $32,000, it would be necessary to use that money to pay the existing deed of trust so the defendants could convey title free of all encumbrances.[4] Schreimann testified that he got on to the idea, as he put it, that it was necessary to deliver an unconditional warranty deed conveying Lot 1111 to the plaintiffs, at the same time preserving the defendants' right of appeal. Schreimann and his clients, according to Schreimann, "reviewed the idea of a supersedious [sic] bond and also ... the idea of a notice of lis pendens." Schreimann had the opinion that a notice of lis pendens would "notify the world" that the judgment was being appealed and that the deed was being delivered "subject to the appeal." The defendants therefore executed a warranty deed conveying Lot 1111 to the plaintiffs and left it in Schreimann's possession. The deed is before us as defendants' exhibit 8. It is unconditional except for a recitation that it is subject to an indenture dated March 10, 1971, and the easements, restrictions and conditions incorporated in the plat. The deed is dated March 15, 1986.

**3.** See, generally, *Eyberg v. Shah,* 773 S.W.2d 887, 894–896 (Mo.App.1989). Because the decree rendered in this case effectively disposes of the whole case on its merits, we find no abuse of discretion in making the express determination required by Rule 74.01(b), thereby permitting this appeal.

**4.** Defendant Mario Colombo testified he purchased Lot 1111 in "the early 1980's" by assuming a mortgage held by the developer, Four Seasons Lakesites, Incorporated.

On April 15 or 16, plaintiff Thomas Steen came to Mr. Schreimann's office. Plaintiffs' attorney had asked for some sort of guarantee that "the title was going to be clear" and Schreimann had had a title insurance company issue a title commitment. Two title insurance commitments were issued. The one before the court was issued to the bank. It shows the title to Lot 1111 to be vested in defendants Colombo, subject to a deed of trust in favor of Four Seasons Lakesites, Inc. Schedule B, Section 2, recited fifteen exceptions to which the commitment was subject. The fifteenth exception is that the policy would be "Subject to appeal of Camden County Circuit Court Case No. CV184–417CC to the Missouri Court of Appeals, Southern District." The parties have discussed the effect of Exception 15 in the title insurance commitment at length, and while we agree that the commitment gave notice that an appeal was pending which might affect the title to Lot 1111, it is not, in our view, necessary to discuss the commitment at length.

Schreimann also received a money order in the amount of $32,000 from plaintiff Thomas Steen. Schreimann took the money to Four Seasons Lakesites "to make sure that the title was clear." Schreimann's "understanding," nowhere contradicted, was that the entire check was delivered to Four Seasons Lakesites. Four Seasons Lakesites "took their proceeds" and delivered the balance to defendants Colombo. Schreimann advised his clients to "hold the funds in escrow pending the outcome of the court of appeals." Defendant Mario Colombo testified that a short time thereafter he received a check "for the difference in [the amount of the money order] and whatever I owed Four Seasons," which he "guessed" was about $29,000, "give or take ... a thousand dollars."

Plaintiff Thomas Steen testified that in April 1986 he had a conversation with his attorney, who advised him that a time would be fixed for exchanging the deed (to Lot 1111) and the money Steen was to pay to clear the title. On April 15, Steen borrowed an additional $32,000 to purchase Lot 1111 from defendants Colombo. Steen denied knowing the judgment of March 19, 1986, (the amended judgment) was going to be appealed.

Steen further testified that he conversed with Schreimann and with his attorney. He took the title insurance commitment to the Bank of Iberia when he went there to obtain the $32,000 to pay defendants Colombo. At first the bank refused to advance funds because of the reservation we have noted in the title insurance commitment. Nevertheless, the bank decided to advance the money and on April 15, 1986, plaintiffs Steen executed a demand note in the amount of $135,711.30 payable to the bank and secured the note with a deed of trust conveying Lot 1111 to one Robert L. Perkins as trustee for the bank. This deed of trust, which is made subject to the original encumbrance, was recorded in Camden County on April 21, 1986. The note incorporated the balance then due the bank and the amount necessary to pay defendants Colombo. The record before us indicates that a notice of lis pendens, giving notice that an "action" had been commenced in this court, in an action to quiet the title to Lot 1111, was filed in the Camden County Recorder's Office on April 28, 1986. Notice of Appeal in Case No. CV184–417CC, Camden County Circuit Court, was given on April 28, 1986. Case No. CV184–417CC was the cause reviewed here as Appeal No. 14757, *Steen v. Colombo*, 722 S.W.2d 648. Although the nature of the action was inaccurately described, an inspection of the lis pendens would have disclosed it. To sum up, the judgment of the circuit court had been fully complied with before the first notice of appeal—the notice of appeal in Appeal No. 14757—was filed. Other facts will be noted in the course of the opinion.

## II

### A

■ As a threshold matter, two or three principles which govern our disposition of this appeal should be stated. In the first place, we bear in mind that the judgment is presumptively correct and the burden is on the appealing party to demon-

strate error. *State ex inf., Ashcroft ex rel. Plaza Properties, Inc. v. City of Kansas City,* 687 S.W.2d 875, 876[2] (Mo. banc 1985); *Conley v. Crown Coach Co.,* 348 Mo. 1243, 1251, 159 S.W.2d 281, 285[8] (1942); *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App.1984); *Weston v. Great Central Insurance Company,* 514 S.W.2d 17, 21[1–3] (Mo.App.1974). Further, on this trial, which, as we have said, is the trial of the Colombos' counterclaim to quiet title (and the bank's counterclaim and crossclaim), no request for findings of fact or conclusions of law was made by either party. We are therefore required by Rule 73.01(a)(2) to regard all fact issues as having been found in accordance with the result reached. Nowadays it is usually held that in a bench-tried case, if the trial court does not state what law it applied the judgment will be affirmed if it is supported by any reasonable theory. *Thomas v. Estate of Ducat,* 769 S.W.2d 819, 820[1] (Mo. App.1989); *Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 208 (Mo.App.1988); *Jensen v. Borton,* 734 S.W.2d 580, 584[2] (Mo.App. 1987). Finally, there is a rule, the application of which defendants have attempted to forestall, that a party may estop himself from taking an appeal by performing acts after the rendition of the order or judgment which are clearly inconsistent with the right of appeal, *Sharp v. Interstate Motor Freight System,* 442 S.W.2d 939, 946 (Mo. banc 1969); *Winsor v. Schaeffer,* 224 Mo.App. 1220, 1223–24, 34 S.W.2d 989–90[1–3] (1931), and the estoppel may consist of any voluntary act which expressly or impliedly recognizes the validity of the judgment, order or decree. 4 C.J.S. Appeal & Error 212 § g. (1957). See generally Annotation, *Defeated party's payment or satisfaction of, or other compliance with, civil judgment as barring his right to appeal,* 39 A.L.R.2d 153 (1955); A.L.R.2d Later Case Service, 38–39 A.L.R.2d pp. 234–245 (1989).

### B

As we have just said, the defendants anticipate and attempt to deflect application of the principle that a party's compliance with a judgment or order may bar his appeal. The defendants argue that their conveyance of Lot 1111 to plaintiffs Steen occurred prior to the first appeal but was necessarily subject to the ruling of this court on that appeal. It is argued that what the defendants call the "issue of mootness" cannot now be considered because that contention was neither argued nor decided on Appeal No. 14757 and because the record indicates the parties did not voluntarily comply with the judgment or decree. These arguments, which are not very clearly articulated, must be discussed.

### (i)

■ As to the argument that this appeal may not now be held "moot" because no such possibility was discussed or decided on the former appeal, it must be remembered that the doctrine of the "law of the case" is not really a species of res judicata. Generally stated, the rule of the law of the case is that the former adjudication is the law of the case as to all questions directly raised and passed upon and is also the law of the case as to matters which arose prior to the first appeal and might have been raised thereon but were not. *Lonnecker v. Borris,* 245 S.W.2d 53, 55[1] (Mo.1951); *Norris v. Bristow,* 361 Mo. 691, 699, 236 S.W.2d 316, 319 (1951). However, the doctrine of the law of the case does not apply when the former ruling was palpably wrong, when there is a substantial difference in the evidence and facts upon the two trials, or when injustice to the rights of the parties would be done by adhering to the first opinion. *Mangold v. Bacon,* 237 Mo. 496, 517, 141 S.W. 650, 655 (banc 1911); *Lonnecker v. Borris,* 245 S.W.2d at 55; *Norris v. Bristow,* 361 Mo. at 699, 236 S.W.2d at 319. We have examined the record on the former appeal in response to the defendants' request that we notice the entire record and find that the record on the prior appeal does not reflect that judgment had in fact been complied with—was a "done deal"—when notice of appeal was filed on April 28, 1986. It is true that the warranty deed was not filed for record until April 28, 1986, but the defendants' deed was executed March 15, 1986, and

was left with Mr. Schreimann for delivery to plaintiffs Steen. On April 15 or 16, 1986, the plaintiffs delivered a money order to Schreimann in the amount of $32,000, as required by the court's order. The defendants' deed and the plaintiffs' check were delivered before the trial court's modified judgment became final. Notice of appeal was filed ten days after the judgment became final.

This line of cases to which we are cited, i.e., *Shroyer v. Shroyer*, 425 S.W.2d 214 (Mo.1968), and *Turner v. Mallernee*, 640 S.W.2d 517 (Mo.App.1982), announce no principle which suggests that the condition upon which the defendants delivered the deed, that is, payment of the $32,000, was not satisfied when Steen gave Schreimann his check (or money order) on April 15 or 16. The record is not altogether clear, but Mr. Schreimann's testimony on own cross-examination indicates that he delivered the deed to plaintiff Thomas Steen upon the date Steen paid the $32,000, or that Steen left the deed with him upon his assurance that he, Schreimann, would record the deed. Nothing before us compels the conclusion that the parties' satisfaction of the judgment on April 15 or 16 was conditional.

(ii)

The real question on this appeal is whether the parties *voluntarily* satisfied the trial court's modified judgment—the judgment entered March 19, 1986. The decree, as noted in *Steen v. Colombo*, 722 S.W.2d at 649, directed the defendants to convey Lot 1111 to plaintiffs Steen and directed the plaintiffs to pay the defendants the sum of $32,000. Our examination of the record indicates that the judgment had actually been satisfied before the notice of appeal was filed. It is true that on the day notice of appeal was given, Mr. Schreimann filed a notice of lis pendens and the notice of lis pendens undoubtedly charged the parties with notice of the litigation from the date of its filing. *Turner v. Edmonston*, 210 Mo. 411, 109 S.W. 33 (1908).

Nevertheless, the parties, including the bank, acquired their interests before the notice of lis pendens was filed and cannot be said to be lis pendens purchasers comparable to the defendant in the *Turner* case, just cited. The defendants did not request the court to fix an amount for a supersedeas bond in accordance with § 512.080.1(2). Certainly the expense of the bond could scarcely have been more than the cost of satisfying the judgment.

 It has been held that when the object of a proceeding is to secure possession of a particular tract of land, a voluntary surrender of possession may bar the right to appeal, where the property is surrendered before process to enforce the judgment has issued. Annot., supra, 39 A.L.R.2d at 189[c].[5] Generally, a defendant who satisfies a judgment against him is barred from appealing that judgment only if the judgment was satisfied voluntarily. *City of Versailles v. Ross*, 208 S.W. 454, 456[4, 5] (Mo. banc 1919); *Leonard v. Pioneer Finance Co.*, 568 S.W.2d 937, 943–44 (Mo.App.1978). Such authority as we have found indicates that when the object of an action is to secure possession of land, the question whether the defendant's surrender was voluntary so as to bar an appeal is a question of fact for the trial court. *Quick v. Paregol*, 61 A.2d 407, 408[8] (D.C. 1948). The authorities we have examined indicate that when the judgment is a judgment for possession of a tract of land, voluntary surrender of the land effectively concedes the correctness of the judgment, thereby rendering the appeal moot.

In *Sherman v. Moore*, 222 Iowa 1359, 271 N.W. 606 (1937), the plaintiffs brought an action for forcible entry and detainer wherein the only question was whether the defendants were wrongfully detaining possession of the premises. Plaintiffs had a verdict; the defendants appealed. Pending appeal the defendants voluntarily surrendered possession of the premises to the plaintiffs. Upon receiving proof of the vol-

---

**5.** Schreimann was interrogated concerning the issuance of process to enforce the judgment. [R. 35] "Q. Was there ever at any time a writ of execution or writ of attachment or writ of gar-

nishment served upon Mr. and Mrs. Colombo, your clients in this case? A. No. Q. Before or even after the delivery of the warranty deed? A. No."

untary surrender, the court dismissed the action as being moot.

*Comeaux v. West*, 78 Kan. 404, 97 P. 381 (1908), involved a purchaser of land who obtained possession of the property but thereafter defaulted in performance of his contract. Plaintiffs brought an action to cancel the deed and to recover possession, and they had judgment. Defendants surrendered the land before execution issued. The court dismissed the appeal as being moot.

In *First Security Bank of Kalispell v. Income Properties, Inc.*, 208 Mont. 121, 675 P.2d 982 (1984), a bank which had purchased defendants' property at a public trustee's sale brought an action alleging unlawful detainer and seeking possession of the property and damages. Defendants counterclaimed, but the plaintiff had summary judgment. Defendants appealed but surrendered possession without seeking a stay of execution of the judgment or executing a supersedeas bond. The court held, 675 P.2d at 985:

> "By paying damages or surrendering property due under a judgment, a party effectively accedes to the correctness of that judgment, and it passes beyond this Court's power to review. (Citations omitted.)"

In *Cochran v. Rowe*, 225 N.C. 645, 36 S.E.2d 75 (1945), a statutory summary ejectment action was brought by the plaintiffs and a jury held they were entitled to immediate possession. The defendant surrendered possession to the plaintiffs. Upon the plaintiffs' motion, the appeal was dismissed on the ground it was moot.

There is some degree of factual analogy between *Ottenheimer v. Mountain States Supply Co.*, 56 Utah 190, 188 P. 1117 (1920), and this case. In *Ottenheimer* the plaintiffs brought an action to recover possession of real property and to quiet title to an adjoining strip of land. Defendant filed a counterclaim. Plaintiffs had judgment. Defendant appealed, but surrendered possession of the premises upon plaintiffs' demand. After the cause had been appealed, the defendant served notice on plaintiffs' counsel, stating in writing that it had sur-rendered possession "without waiving any of its claims against [the plaintiffs]." The court held that the defendant could not acquiesce in the judgment and, at the same time, reserve his right to assert error therein. The court stated, 188 P. at 1118, that:

> "[2] It is elementary that in case a party to an action accepts the benefits of a judgment in his favor or acquiesces in a judgment against him he thereby waives his right to have said judgment reviewed on appeal."

■ In our view, the rule announced in the cases just cited and discussed is controlling and determinative on the merits of this appeal. The records before us indicate that the parties attempted to negotiate their differences even after the trial court's judgment had been rendered. The evidence is subject to the inference that the defendants voluntarily satisfied the judgment, attempting to acknowledge and deny its validity at the same time. The judgment of the trial court quieting title in the plaintiffs is affirmed.

### III

■ We have not overlooked the brief filed and the arguments advanced by the respondent bank. Defendants' counterclaim prayed, among other things, that the deed of trust executed by the plaintiffs in favor of the bank be cancelled and expunged as a cloud upon the defendants' title. The decree entered does implicitly validate the bank's deed of trust, but the rights of the parties should be explicitly declared in a quiet title action, and upon remand, the court should amend its decree of July 28, 1989, to decree that the deed of trust executed April 15, 1986, by plaintiffs Thomas D. and Loretta F. Steen in favor of the Bank of Iberia and recorded in Book 129 at Page 133 of the deed records of Camden County, Missouri, is a valid deed of trust which encumbers Lot No. 1111 in Cornett Cove No. 5 according to the terms of the said deed of trust, unless it should appear that the debt secured by the deed of trust has been discharged or that other security has been substituted. The decree

entered by the trial court on July 28, 1989, quieting title in plaintiffs Steen is ordered modified as just indicated and is in all other respects affirmed. The cause is remanded for disposition of the plaintiffs' original claim and entry of a judgment specifically disposing of the whole case.

FLANIGAN, P.J., concurs in result.

MAUS, J., dissents and files opinion.

SHRUM, J., not participating because not a member of the court when case was submitted.

MAUS, Judge, dissenting.

I dissent. The basic facts of this on-going controversy are found in *Steen v. Colombo*, 722 S.W.2d 648 (Mo.App.1987) (*Steen I*) and in the majority opinion (*Steen II*). The controversy concerns title to Lot 1111 and the Steens' construction of improvements thereon. These were the issues developed and decided in *Steen I.* Neither party contends nor cites any reason why the opinion in *Steen I* is not the "law of the case" within the doctrine stated by cases such as *DeMayo v. Lyons,* 243 S.W.2d 967 (Mo.1951) and *Coleman v. Ziegler,* 248 S.W.2d 610 (Mo.1952). I consider it to be such. It is significant to note that the Steens were mistaken concerning the location of Lot 1110. Nothing of record gave them constructive notice that they did not own the lot upon which they made improvements. Cf. *First Federal Savings & Loan v. Wills,* 789 S.W.2d 873 (Mo.App. 1990); *Chicago Title Ins. v. Farmers Ins. Co.,* 734 S.W.2d 887 (Mo.App.1987); *Hartman v. McFadden,* 719 S.W.2d 59 (Mo.App. 1986). It is equally significant that on retrial of the principal issues, the measure of Steens' recovery is that stated in Chief Judge Crow's concurring opinion.

After the initial hearing upon the Steens' petition and Colombos' answer, the trial court entered what was denominated an "interlocutory judgment". This judgment provided that within 60 days the Steens could tender $32,000 to the Colombos and that the Colombos, within 60 days thereafter, should convey marketable title to Lot 1111 to the Steens. The judgment was said to be "interlocutory" for the purpose of the enforcement of the judgment. Thereafter, the Colombos announced, in court, they were not going to comply with the interlocutory judgment. Then, the court, on March 11, 1986, entered a final judgment incorporating findings of fact and conclusions of law in the interlocutory judgment, and ordered the Colombos to convey Lot 1111 by warranty deed to the Steens, subject to an existing deed of trust. The final judgment further provided that simultaneously therewith the Steens were to pay the Colombos the sum of $32,000, less the balance secured by the deed of trust.

The final judgment was followed by negotiations between the parties to settle the controversy. The negotiations failed. It must be noted that the Colombos' then attorney, Donald Schreimann, was also an agent for the title insurance company that was called upon to issue a policy insuring the Bank of Iberia as mortgagee in a deed of trust covering Lot 1111 to be executed by the Steens. Pursuant to an arrangement between Steens' counsel and Schreimann, on April 15, 1986, Thomas D. Steen went to the office of Schreimann to obtain a commitment for the title insurance. That commitment contained "Exception 15" which provided the policy would be "Subject to appeal of Camden County Circuit Court Case No. CV184417CC to the Missouri Court of Appeals, Southern District." When asked if he and Schreimann discussed the title commitment and paragraph 15, that it was subject to appeal, Thomas D. Steen answered, "Yes, we did." He was also asked the following question and gave the following answer: "Q And you knew that if the decision of the trial court was reversed then that would place title in question, didn't you? A Yes."

Steen then took the title insurance commitment to the Bank of Iberia. The loan officer on duty declined to make the proposed loan because of Exception 15. At the insistence of Steen, she called the Chief Executive Officer of the Bank, Robert Minick, who was attending a meeting. Minick called Steens' attorney. As a result of

their conversation, Minick approved the loan in spite of Exception 15.

Steen then obtained a bank money order drawn on the Bank of Iberia, payable to the Colombos and Four–Seasons Lakesites, Inc. (mortgagee under the existing deed of trust) in the amount of $32,000. He took this money order to Schreimann. Schreimann stated that he would see that the existing deed of trust was released and the warranty deed to the Steens recorded. This was done on April 28, 1986. The lis pendens, discussed in the majority opinion, was filed two minutes prior to the filing of the warranty deed. Notice of Appeal was filed on April 28, 1986.

As noted in the majority opinion, following the issuance of the opinion in Steen I, the Colombos filed a counterclaim reciting the underlying facts and praying for the court "to divest out of the Steens and the Bank of Iberia any and all interests that it may have in Lot 1111 and quiet title to that lot in the Colombos." The Colombos had maintained $32,000 in a special fund and tendered that amount to the Steens. Count II of that counterclaim stated a cause of action in ejectment. The Steens and the Bank of Iberia filed answers and counterclaims praying that title to Lot 1111 be quieted in the Steens subject to the deed of trust in favor of the Bank of Iberia.

The Colombos "counterclaim" would more properly be called a "motion for restitution". "Upon reversal of a judgment the appellant is entitled to restitution from the respondent of all benefits acquired under the judgment during the pendency of the appeal." *In re Marriage of Cook*, 663 S.W.2d 789, 790 (Mo.App.1984). "Restitution may be sought in the court rendering the reversed judgment, or by an independent action in another court." *In re Marriage of Cook*, at 790. (Authorities omitted.)

The trial court severed for trial the claim for restitution and the answers and counterclaims of the Steens and the Bank. In that trial, it was the basic position of the Colombos that the warranty deed was involuntarily given and delivered subject to the outcome of the appeal that resulted in *Steen I.* It was the position of the Steens and the Bank of Iberia that the deed was voluntarily given and was absolute in form and unconditionally vested title in the Steens.

The majority opinion is based upon the proposition that the Colombos are estopped from claiming title to Lot 1111 by voluntarily "performing acts after rendition of the order or judgment which are clearly inconsistent with the right of appeal."

I believe the undisputed evidence established that the warranty deed did not vest unconditional title in the Steens. The execution of the warranty deed did not convey title. Title was conveyed only upon delivery. *Shroyer v. Shroyer*, 425 S.W.2d 214 (Mo.1968). The deed was delivered only after the Steens and the Bank had the commitment for title insurance, and that actual notice the title to be acquired by the Steens would be subject to the appeal in *Steen I.* The deed was delivered upon that condition. The execution and the delivery of the deed by the Colombos was in compliance with the final judgment of the trial court. It is significant they could have been cited for contempt for failure to obey. It has been held that the failure of a party to comply with an order of the trial court may defeat that party's right to appeal. 4 Am.Jur.2d, Appeal and Error, § 239. Under these circumstances, the execution and delivery of the warranty deed was not a voluntary compliance with the judgment of the trial court that estops or bars the Colombos from claiming title to Lot 1111 or from appealing. Cf. *Edith Inv. Co., Inc. v. Fair Drug, Inc.*, 617 S.W.2d 567 (Mo.App. 1981); *Ryan v. Engelke*, 285 S.W.2d 6 (Mo. App.1955). This conclusion is not altered by the fact that the conveyance was not subject to the deed of trust and the Colombos accepted the balance of the $32,000. The Steens caused the bank money order to be made payable in such form that the deed of trust would be released before the Colombos would convey and receive any portion of that $32,000. Cf. *Rosenblum v. Jacks or Better of America West Inc.*, 745 S.W.2d 754 (Mo.App.1988). As stated, the Colombos added sufficient personal money

to the portion of the bank money order received by them to create a fund of $32,-000. They maintained this fund in a special account and in their claim for restitution tendered that fund to the Steens.

The Steens and the Bank seem to concede that if the lis pendens of the appeal had been filed before the deed was delivered and the deed of trust was executed, their title would be subject to the consequences of the appeal in Steen I. It must be noted the deed of trust under which the Bank claims was recorded out of the claim of title. However, the time of filing of the lis pendens is not determinative. A lis pendens serves as notice of pending litigation. The Steens and the Bank had actual notice the title acquired by the Steens was subject to that appeal. *Turner v. Edmonston*, 210 Mo. 411, 109 S.W. 33 (1908).

There is a second reason the record establishes that the execution and delivery of the warranty deed was not voluntary. Had that deed been an unconditional and voluntary conveyance, the appeal in Steen I would have been "moot" and properly dismissed. The Steens had knowledge of all the circumstances surrounding the execution and delivery of the warranty deed when the Notice of Appeal in Steen I was filed. If it was their position the conveyance was unconditional and voluntary, the issue of mootness could have been raised in Steen I. They did not do so.

"Missouri follows the general rule. As stated in *Wilson v. Toliver*, 305 S.W.2d 423, 428 (Mo.1957), 'the decision on the former appeal will be deemed an adjudication, not only on all questions directly raised and passed on, but also of matters which arose prior to the first appeal and which might have been presented at that time but were not.'" *Protection Mut. Ins. Co. v. Kansas City*, 551 S.W.2d 909, 915 (Mo.App.1977).

The opinion in Steen I is a determination that the appeal in Steen I was not moot. It follows that it was also a determination that the conveyance of Lot 1111 was not unconditional and voluntary; the Colombos are neither barred from claiming Lot 1111 nor from appealing in Steen II.

Moreover, the Steens elected not to raise the issue of mootness in Steen I, but to seek affirmance on the merits of the appeal. This election is inconsistent with their present contention. *Owen v. City of Branson*, 305 S.W.2d 492 (Mo.App.1957). To permit them to adopt their present position, is to permit them to seek reversal of the opinion of this court in Steen I by a collateral attack. Cf. *Bover v. Long*, 676 S.W.2d 893 (Mo.App.1984). For the reasons stated, I would reverse the judgment of the trial court in Steen II.